UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PAMELA GEORGE, Individually | : | CIVIL ACTION |
| and as the Tutrix of her minor daughter, | : | |
| Kaycie George | : | NO.   00-0006 |
| | : | |
| VERSUS | : | SECTION "T" |
| | : | |
| HOME DEPOT USA, INC.,JOHN DOE, | : | MAGISTRATE (5) |
| WILLIAM DOE,  SAM DOE | : | |
| and XYZ INSURANCE COMPANY | : | |

### REPLY MEMORANDUM IN SUPPORT OF
### MOTION TO REMAND

*MAY IT PLEASE THE COURT:*

Plaintiff, Pamela George, submits this reply memorandum in support of her Motion to Remand to clear up several issues brought up in Defendant, Home Depot's Opposition to Motion to Remand. Plaintiff urges this Honorable Court to consider her reply to Defendant's Opposition as to the following important issues:

*ADDITIONAL BACKGROUND INFORMATION:*

Plaintiff originally filed suit in the Parish of Orleans, State of Louisiana against Home Depot U.S.A. **and** against three defendants whose identity were unknown to plaintiff. In an attempt to obtain the names of the Home Depot employees who were driving a Home Depot truck in or around the scene of this accident, plaintiff made diligent effort by hiring a private investigator. The Investigator's pre-suit investigation revealed that a truck driver out of the Kenner store, Scott Shields, may have been involved in this accident, along with either one or two other Home Depot employees.

Plaintiff's counsel made a decision to file suit without specifically naming Scott Shields, the

truck driver from Kenner, because the information gleaned from the pre-suit investigation was not sufficiently definite and counsel was concerned that he would be confronted with a Rule for Sanctions. In the alternative, counsel made a good faith decision to name Home Depot and **three fictitiously named Home Depot employees and to substitute the proper defendants after discovery**.

It is important to stress that multiple and varied accounts of this accident **all referenced the involvement of a Home Depot delivery truck**. First, Plaintiff, Pamela George continuously maintained that a Home Depot truck pulled out in front of her causing her to swerve and lose control of her automobile. Second, the Police Report stated that Pamela George stated that a Home Depot truck pulled out in front of her. This information was given to the police officer immediately after the accident. Third, a disinterested witness, Ronald Walker, an employee of the New Orleans Sewerage and Water Board, saw the Home Depot truck immediately before the accident.

Plaintiffs first set of Interrogatories, dated June 15, 2000, asked for the names of all Home Depot truck drivers for all stores in the New Orleans area. Plaintiffs first set of discovery also sought policy and procedure manuals relative to truck drivers. Home Depot answered this first discovery on October 10, 2000 by providing only the names of truck drivers from the New Orleans East Store and the Slidell store. Defendant **did not** provide the names of truck drivers from **all** stores, as requested by plaintiff in discovery. None of the truck drivers whose names were provided in answer to discovery are individuals who are allegedly involved in this accident.

Home Depot's Answer to Interrogatory No. 3 also stated that:

> "Home Depot employees **Mike Kospelich** and **Chris Rome** also **witnessed the incident**. Both Mike Kospelich and Chris Rome remain in Home Depot's employ and will be made available for depositions at a time and place convenient to all parties. Home Depot is not at liberty to provide these employees addresses as this information constitutes information which would have to be obtained from their personnel files."

Prior to receipt of this discovery response, Home Depot's counsel had continuously maintained that

2

no one at Home Depot had *any knowledge* about Ms. George's accident. Since Home Depot was now admitting, for the first time, in answers to Interrogatories that two of its employees were at the scene, it was logical to conclude that these two employees were two of the potential three employees that plaintiff's pre-trial investigation determined were at the scene of the accident.

Thereafter, plaintiff made it known to defendant that the addresses of Kospelich and Rome were required for service. On November 9, 2000, counsel for Home Depot agreed to accept service rather than provide the addresses of these employees. (See Correspondence from Ms. Fallis - Exhibit 1, Page 2 - relevant language highlighted).

Plaintiff's Supplemental Complaint was filed on December 20, 2000, approximately 6 weeks after counsel for Home Depot first advised that she would accept service for these two employees, whose addresses Home Depot still consistently refused to provide. However, the Clerk's office refused to file this pleading until after Plaintiff filed a Certificate stating that opposing counsel had no objection to the filing of the Supplemental Complaint.

On January 29, 2001, counsel for Home Depot **consented** to the filing of the Supplemental and Amending Complaint. (See Exhibit 2).

The Supplemental Complaint substitutes the names of Kospelich and Rome for two of the ficticiously named defendants in plaintiff's Original Petition filed in the Civil District Court of Orleans, State of Louisiana.[1] That Original Petition alleged that Kospelich (ficticiously named as "William Doe" and "Sam Doe") were residents of "this Parish and State". The Original Petition was filed in Orleans Parish, State of Louisiana. Thus, the Louisiana citizenship of Kospelich and Roane (identified as Rome) is alleged by substitution.

---

[1] Defendant now advises in its Opposition to Motion to Remand that the correct name of defendant is Kristian K. Roane. However, defendant first identified this employee as "Chris Rome". See Home Depot's Supplemental Answer to Interrogatory No. 3, attached hereto as Exhibit 3.

Defendant suggests in its Opposition that neither Kospelich nor Roane were driving a Home Depot truck based on affidavits submitted by these two employees. Defendant further suggests that no Home Depot trucks were in the area, based on affidavits by Kospelich and Roane. However, the testimony of an independent witness, Ronald Walker, does place a Home Depot truck at or near the scene of this accident.

There are at least two theories which would place a Home Depot truck at or near the scene of this accident. The first theory is that a Home Depot truck from **any of the stores in this area** could have been in the area making a delivery. On November 11, 2000, Plaintiff attempted to discover Home Depot's **(1) delivery pick up list and load authorization forms, (2) daily trip time records**; and **(3) delivery confirmation forms** from all stores in the New Orleans area (which would include the Kenner store where Scott Shields, is a truck driver. Shields is the third Home Depot employee who may have been involved in this accident, but out of an abundance of caution, additional discovery is needed prior to naming this employee as a defendant). (See Plaintiff's Second Request for Production - Exhibit 4).

On November 29, 2000, Home Depot responded to the requests for production that sought those documents by stating that it had 'not been able to locate any delivery pick list and load authorization' forms which pertain to deliveries scheduled and/or made in the New Orleans area on May 11, 1999; that it has "not been able to locate any 'daily trip time records' which pertain to deliveries scheduled and/or made in the New Orleans area on May 11, 1999; and that it "has not been able to locate any 'delivery confirmations' which pertain to deliveries made in the New Orleans area on May 11, 1999." (See Home Depot's Response to Plaintiffs' Second Requests for Production - Exhibit 5.) Now, four months after these documents were requested, Home Depot is finally admitting that it has "4 boxes of orders placed for deliveries during that time period" which were

obtained from Home Depot's home office computer. (See Correspondence from Ms. Fallis dated March 21, 2001 - Exhibit 6).

The second theory that places a Home Depot truck at or near the scene of this accident is that a Home Depot truck driver who was not supposed to be in the area was in the area nonetheless. Plaintiffs are entitled to conduct further discovery to determine whether a Home Depot truck was in the area of the accident. Plaintiff has repeatedly made due and diligent effort to obtain the identity of the driver of the Home Depot truck which was identified by plaintiff and by the disinterested witness, Ronald Walker. However, defendant has repeatedly thwarted all of plaintiff's efforts to discover documentation which might establish this fact.

Home Depot now argues that because Ronald Walker, the disinterested witness, cannot identify the driver of the Home Depot truck that he saw at the scene of the accident, that plaintiff "has no choice but to rely on Home Depot for this information." Home Depot then concludes that since the only two known Home Depot employees at the scene claim by affidavit that they were not driving a Home Depot truck, that plaintiff's case falls apart and this case should be dismissed. However, plaintiffs are entitled to a trial by jury. The defendant's affidavits are not "evidence". A jury is entitled to weigh the credibility of all witnesses. Based on the disinterested testimony of Ronald Walker, a Home Depot truck **was** in the area. It stands to reason that a Home Depot employee was driving that truck. Home Depot has admitted that two of its employees were the first to arrive on the scene of the accident immediately after it occurred.

Plaintiff has alleged sound theories that would give rise to tort recovery. First, a Home Depot truck pulled out in front of Pamela George, causing her to swerve, lose control of her car, and strike a tree. Second, one of the Home Depot employees who came up to her wrecked car, attempted to pull her out of her car, despite her cries of pain, which action resulted in a worsening of her

injuries. Whether or not the employee attempted to pull Ms. George from the car and worsened her injuries is a question of fact to be decided by a jury. This factual determination is not one that is made on a Motion to Remand.

The issue at this juncture is **not** whether Ms. George can ultimately prove her case, but whether diversity is destroyed by the substitution and formal naming of two Home Depot employees, both of which resided in the Parish of Orleans, State of Louisiana at the time the Complaint was originally filed.

Home Depot acknowledges that Roane is a Louisiana citizen and that Kospelich was a Louisiana citizen at the time of the accident. Kospelich's affidavit states that he did not move to Texas until March 2000, long after suit was filed. Thus, both Roane and Kospelich were Louisiana citizens at the time suit was originally filed.

### *LEGAL ARGUMENT*

The plain language of 28 U.S.C.§ 1447 (e) requires a remand. That statute provides:

(e)     If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.

In Cobb v. Delta Experts, Inc., et al., 186 F.3d 675; 98-30539 (5th Cir. 9/7/99), the Fifth Circuit held that the "post-removal joinder of non-diverse defendants pursuant to Fed. R. Civ.P 19 destroys diversity for jurisdictional purposes and requires remand, even when the newly joined defendants are not indispensable." There, the district court granted plaintiffs' **unopposed** motion to amend their complaint to add claims against four other defendants, two of which were Louisiana domiciliaries. Plaintiffs then filed a motion to remand to state court based on lack of complete diversity. The district court denied remand reasoning that the two Louisiana defendants had been fraudulently

joined, and their joinder would therefore not destroy federal jurisdiction.

On appeal, plaintiffs argued that the district court did not have the option of joining the non-diverse defendants and then declining to remand. Plaintiffs argued that once the court permitted joinder, it was bound to remand. The Fifth Circuit agreed. The Court held that by expressly giving a district court only two options, 28 U.S.C.§ 1447 (e) requires that if a court permits joinder of non-diverse defendants, it cannot then refuse to remand. The Court examined the legislative history and noted that when adopting this section, Congress rejected a version that would have permitted district courts to join non-diverse defendants and, at the Court's discretion, then retain jurisdiction. Thus, concluded the Fifth Circuit, the history indicates that Congress must not have intended to allow joinder and then refuse remand.

In Cobb, as in the instant case, joinder was **consented** to by defendant and **permitted** by the Court. The Fifth Circuit in Cobb held that once a Court permits joinder of non-diverse defendants, the Court loses subject matter jurisdiction and thus has no power to even consider whether fraudulent joinder applies.

Here, defendant consented to the filing of the supplemental petition and the Court permitted the petition to be filed. While the supplemental petition did not specifically state the jurisdiction of the substituted parties, the Original Petition did.

In Casas Office Machines, Inc. v. Mita Copystar of Am, Inc., 42 F.3d 668 (1st Cir. 1994), the Court held that even when a court permits the substitution of **dispensable**, non-diverse defendants for fictitious defendants, diversity jurisdiction is still destroyed. There, the Court based its decision on the explicit language of §1447(e) which the court found applied to the identification of fictitious defendants after removal.

Thus, whether the joinder of Roane and Kospelich is viewed as a substitution of ficticiously named non-diverse defendants or the joinder of non-diverse dispensable or indispensable parties under Rule 19, once defendant consents to joinder and once the Court in fact permits joinder, remand is required under §1447(e).

All of the other issues brought forward by defendant in its Opposition to Motion to Remand, such as prescription and lack of a viable theory of recovery are issues that may be brought in other motions after remand.

## CONCLUSION

Plaintiffs have, with Court approval, supplemented and amended their complaint by naming two defendants who were both domiciled in and citizens of the State of Louisiana at the time the original suit was filed. One of these defendants is still domiciled in and a citizen of the State of Louisiana at the present time. Thus, there is no longer complete diversity and this matter should be remanded to the State court.

**Respectfully submitted:**

**CARDONE LAW FIRM**
A Professional Law Corporation

_____
CLIFFORD E. CARDONE (#3874)
829 Baronne Street
New Orleans, Louisiana 70113
(504) 581-1394

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the above and foregoing Reply Memorandum has been forwarded to all counsel of record by placing a copy of same in the United States Postal Service, postage prepaid or by Telecopy, this 23 day of March, 2001, at New Orleans, Louisiana.

                                                               CLIFFORD E. CARDONE

**SEE RECORD FOR
EXHIBITS
OR
ATTACHMENTS
NOT SCANNED**