

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 MAR 30 P 3: 37

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PAMELA GEORGE, Individually and as the | § | CIVIL ACTION |
| Tutrix of her minor daughter, Kaycie George | § | |
| | § | NO.  00-0006 |
| VERSUS | § | |
| | § | SECTION "T" |
| HOME DEPOT USA, INC.,   JOHN DOE | § | |
| WILLIAM DOE, SAM DOE and | § | MAGISTRATE (1) |
| XYZ INSURANCE COMPANY | § | |

### SUPPLEMENTAL MEMORANDUM IN
### OPPOSITION TO MOTION TO REMAND

This supplemental memorandum is respectfully submitted by Home Depot, U.S.A., Inc.

("Home Depot") in further support of its Opposition to Plaintiff's Motion to Remand.  Home Depot

filed its original memorandum on March 20, 2001.  George filed a reply memorandum on March 23,

2001 (the "Reply") which was first received by the undersigned by U.S. Mail on March 26, 2001.

It is telling that the Reply does not address the core of Home Depot's argument.  It does not

address the fatal flaw in the proceedings against Roane and Kospelich, parties without whom this

court clearly has jurisdiction.  Similarly, Plaintiffs do not attack the clear line of cases that establish

that F.R.C.P. Rule 21 is available to allow dismissal to preserve diversity jurisdiction.

George is asking this Court to review *Cobb* and the rules pertaining to removal and remand

in a vacuum.  Neither the rules nor other Fifth Circuit authority require this.  *Cobb* does not deal with



Fee_____
Process_____
X  Dktd_____
✓  CtRmDep____
Doc.No._____

the situation we face here, where there are reasons why the newly added defendants should not be considered in the diversity analysis. *Cobb* should be read consistent with the spirit of the federal rules of liberal construction and application as well as other cases dealing with removal.

In the recent case of *Johnson v. Hublein, Inc.*, 227 F.3d 236 (5th Cir. 2000), the Fifth Circuit went beyond the literal letter of 28 U.S.C. § 1446(b) to uphold a judicially created exception to the thirty (30) day requirement of Section 1446(b), the revival exception. The revival exception provides that a lapsed right to remove an initially removable case within the mandatory thirty day period can be restored under certain circumstances.[1] Based on its reliance on the revival exception, the *Johnson* court ruled that removal, twenty months after the original petition (which was removable) was timely.

*Johnson* also addressed the "genuine party" exception; that is, when the pleadings and the record show that no cause of action exists against a non-diverse defendant, that non-diverse defendant is not a "genuine party" and is therefore excluded from consideration in a diversity analysis.

The case of *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812 (5th Cir. 1993) is also significant in view of the dearth of facts argued by George in the Reply. *Jernigan* is significant, not only because

---

[1]Following the 1988 amendment to 1446(b), it was argued that this exception was rejected as this amendment provided for the new one (1) year window for removing diversity cases. The *Johnson* court ruled that although the 1988 amendments provided for a new exception to the prior rule, and the amendments did not incorporate the "revival exception" this failure to expand the window for removing, without also codifying the revival exception by Congress was not to be interpreted to mean that the revival exception was impliedly rejected, and in fact, the judicially created revival exception lives on to date.

2

it sanctioned the use of affidavits to prove that a defendant was not a proper party[2], but also because a named defendant was treated as a "non party" where it was immune from liability under Louisiana law. In *Jernigan*, non-diverse defendants that were the plaintiff's employers were statutorily immune from liability due to the operation of the Louisiana worker's compensation laws. Without ever mentioning a Rule 21 dismissal, the Court disregarded the employers as defendants for diversity purposes!

*Jernigan* held that the mere naming of a party was not the sine qua non of destroyed diversity jurisdiction, and that the court could consider no cause of action as a basis for disregarding them for diversity purposes. The defendant against which no cause of action exists is, according to Jernigan, was never a real party in interest, and therefore, diversity jurisdiction was never destroyed by their presence in the case.

The Court considered the joinder as fraudulent joinder without ever finding any actual fraudulent intent. The Court also stated:

> A review of the record discloses that in actuality there are no genuine issues of material fact. Rather, the only "issues" allegedly contested are unilateral with Jernigan, produced entirely by his own confusion as to the identity of his employer. As with a summary judgment motion, in determining diversity the mere assertion of "metaphysical doubt as to the material facts" is insufficient to create an issue if there is no basis for those facts.

*Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812 (5th Cir. 1993).

---

[2] The diversity analysis is essentially a Rule 21 analysis which actually includes a 12 (b) 6 analysis with the use of affidavits, deposition and other discovery. *Badon v. Nabisco*, 224 F.3d 382 (5th Cir 2000).

*Johnson* and *Jernigan* illustrate that Rules 15, 19, 21 and the removal statutes have not been strictly construed or isolated from the other rules in their interpretation. What these courts are essentially saying is that regardless of who the pleadings show to be party's in a case, if the Plaintiff does not have a valid cause of action against the non-diverse defendant, there is federal court subject matter jurisdiction based on diversity, because the non-diverse defendant is not a "real party in interest."

There is even more basis for allowing the defendants in the instant case to be dismissed for the purposes of preserving diversity where Rule 21 of the Federal Rules of Civil Procedure establish a procedure for dismissing defendants for any reason that is just. *Jernigan* also stands for the proposition that non-diverse parties can be disregarded without any reference to dismissal.

In this case, the irrefutable affidavits of Kospelich and Roane prove that they can not be "Genuine Parties" to this action and therefore, the joining of Kospelich and Roane had no effect on this court's subject matter jurisdiction. First Kospelich and Roane are statutorily immune from tort liability resulting from their rescue efforts. In order to make this determination the court need not look past Plaintiff's complaint and La. R. S. 9:2793. Next, Plaintiff's clearly have no cause of action against Kospelich or Roane for Ms. George's loss of control of her car as neither Kospelich nor Roane were driving a Home Depot truck that day or any other. Therefore, they could not have caused the accident. Plaintiff's counsel essentially admits that Plaintiffs can not prove a cause of action against Kospelich or Roane in his reply brief. Considering Plaintiffs' reply, it appears that the facts as established by the affidavits, deposition and written discovery in this case, coupled with complete absence of rebuttal by George, place this case squarely within *Jernigan*.

4

On March 28, 2001, Home Depot filed a Motion to Dismiss for Failure to State a Claim and for Prescription and in the Alternative Motion for Summary Judgment (the "Motion") and incorporated memorandum in support thereof (the "Memorandum"), which has a bearing on the remand issue. Home Depot has attached a copy of the Memorandum (without exhibits) for the Court's ready reference. This memorandum sets forth in greater detail the fact that no cause of action exists against Kospelich or Roane.

WHEREFORE, Home Depot U.S.A., Inc., prays that after due proceedings had that this Court deny Plaintiffs' Motion to Remand, and for all other relief that is just and equitable.

Respectfully submitted,

_____
DEBORAH W. FALLIS, (Bar #2177)
**Heller Draper Hayden Patrick & Horn, LLC**
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130
(504) 581-9595 • (504) 568-1888

Attorneys for Home Depot U.S.A., Inc.

## CERTIFICATE OF SERVICE

I hereby certify a copy of the foregoing Supplemental Memorandum in Opposition to Motion to Remand was served upon Plaintiffs through their counsel of record: Clifford E. Cardone, Esq., 829 Baronne Street, New Orleans, Louisiana 70112; by facsimile and by depositing a copy of same in the U.S. Mail, postage prepaid and properly addressed; and upon Michael E. Katz, Esq., 365 Canal Street, Suite 2700, New Orleans, Louisiana 70130; by depositing a copy of same in the U.S. Mail, postage prepaid and properly addressed, this 28 day of March, 2001.

_____



UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PAMELA GEORGE, Individually and as the | § | CIVIL ACTION |
| Tutrix of her minor daughter, Kaycie George | § | |
| | § | NO.  00-0006 |
| VERSUS | § | |
| | § | SECTION "T" |
| HOME DEPOT USA, INC., JOHN DOE | § | |
| WILLIAM DOE, SAM DOE and | § | MAGISTRATE (1) |
| XYZ INSURANCE COMPANY | § | |

**MOTION AND INCORPORATED MEMORANDUM OF
HOME DEPOT U.S.A., INC. IN SUPPORT OF MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM AND FOR PRESCRIPTION,
AND IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

This Memorandum is respectfully submitted by Home Depot U.S.A., Inc. ("Home

Depot") Michael Kospelich, ("Kospelich") and Kristian Roane ("Roane") (jointly

"Defendants") in  support of their Motion to Dismiss Kospelich and/or Roane  for failure

to state a claim and for prescription, pursuant to Federal Rule of Civil Procedure 12(b)(6).

In the alternative, Defendants request that their motion be treated as a Motion for

Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c).

### Procedural History and Causes of Action
### Asserted by George

This action was filed on behalf of Pamela George ("Ms. George"), individually and as the Tutrix of her minor daughter, Kaycie George (jointly "George"). The incident made subject of this litigation occurred on May 11, 1999, (the "Incident"). George's original complaint was filed on November 16, 1999 against Home Depot, three fictitious parties, and an unnamed insurance company. Thereafter, on or about February 1, 2001, George filed a Supplemental and Amending Complaint (the "Amendment"), substituting Kospelich, Roane and National Union Fire Insurance Company.

In the Amendment George alleges two (2) consecutive but distinct scenarios during which Kospelich and/or Roane may have committed the negligence which forms the basis of George's claims:

1.    George's accident was a direct result of the negligence of the [sic] Michael Kospelich, and/or Kristian Roane for eleven (11) different reasons which together amount to the allegation that while driving a Home Depot delivery truck Kospelich, **and/or** Roane pulled out in front of Ms. George when Ms. George had the "right of way" causing Ms. George to swerve, lose control of her car and hit a tree (Amended Complaint paragraphs V, VI, VII, VIII, and IX); and

2

2.      Following George's accident which Kospelich, and/or Roane **may not have committed**, Kospelich and/or Roane negligently provided good Samaritan rescue services which aggravated or worsened Ms. George's injury. (Amended Complaint paragraph X)

### Overview of Basis For Dismissal of Kospelich And Roane

George's petition fails to state a claim against Kospelich and Roane for the following reasons:

1.      Neither Kospelich nor Roane could be responsible for causing Ms. George to lose control of her car on May 11, 1999 because neither were driving a Home Depot truck;

2.      Kospelich and/or Roane are immune from liability for any gratuitous emergency rescue assistance rendered pursuant to La. R. S. 9:2793, entitled *Gratuitous service at scene of emergency; limitation on liability;*

3.      Roane did not provide any rescue assistance to Ms. George, therefore, under no circumstances can he be liable to George for any damages that she alleges to have suffered as a result of the emergency rescue assistance provided to Ms. George.

4.      Any claims against Kospelich and Roane have prescribed because:

a.      Neither Kospelich nor Roane were discharging duties in the scope of their employment during their lunch hour, which is when Ms.

3

George's accident occurred; therefore, there is no joint liability between Home Depot and Kospelich or Roane, and suit against Home Depot could not interrupt the one (1) year prescription period; and

b.      The incident occurred on May 11, 1999, but George did not seek leave of court to join Kospelich and Roane as defendants until the year 2001, which was well over one (1) year after George's accident.

Based on George's inability to demonstrate that they have any prosecutable cause of action against Kospelich or Roane, Kospelich and Roane cannot be regarded as "genuine parties" for diversity jurisdiction determination. *Johnson v. Heublein, Inc.*, 227 F.3d 236 (5th Cir. 2000)

Should the Court deem it necessary to go beyond the pleadings in order to find that the dismissal of Kospelich and Roane is warranted, the affidavits of Home Depot's employees, George's answers to Home Depot written discovery, and the deposition of "George's witness," Ronald Walker, submitted herewith, provide the basis for the dismissal of Kospelich and Roane by summary judgment.

### Underlying Facts

1.   <u>**George's Petition**</u>

Ms. George was driving westbound on the I-10 Service Road which is located on the north side (by New Orleans terms the "lake side") of I-10.  Her child, Kaycie, was in the back seat of the car.  The service road is a two lane, two way road.  According to George,

4

Ms. George passed a "Home Depot" truck which was standing in a driveway facing the service road. Ms. George claims that she was either lightly tapped by the truck, or forced to "take evasive action" in order to avoid being hit by the truck. In doing so, Ms. George lost control of her car and hit a tree.

George's petition does not specify who was driving the truck which caused her to take the "evasive action." Her petition does, however state that her accident and injuries were a direct result of Kospelich **and/or** Roane's failure to follow traffic laws, the implication being that either Kospelich **and/or** Roane was driving the truck. Ms. George's doubt regarding whether Kospelich **and/or** Roane were driving the truck is again highlighted by George's description of her second alleged cause of action.

"**[A]lternatively and/or in the conjunctive** George alleges that Kospelich and Roane **alone or in combination**" injured Ms. George when after her accident, **one or both** of them removed her from her car. George's petition does not specify whether Kospelich **or** Roane, are culpable for either of George's alleged causes of action.

2.    **Defendant's Facts**

Home Depot denies that there was a Home Depot truck anywhere in the vicinity of Ms. George's accident.

Both Kospelich and Roane were employed by Home Depot as department managers on May 11, 1999. (Affidavit of Kospelich, ¶ 12 - Exhibit A)(Affidavit of Roane, ¶ 6 - Exhibit B) As department managers they were hourly wage employees. (Affidavit of Kospelich,

5

¶15)(Affidavit of Roane, ¶8)(Affidavit of David Perkins ¶17 - Exhibit C)  As hourly wage employees, Kospelich and Roane were required by Home Depot to "clock in" and "clock out" for lunch and they were free to leave the store's premises to conduct any lawful activity that they chose during the time that they are "off the clock" as during this time they are not performing duties for Home Depot. (Affidavit of Kospelich, ¶9)(Affidavit of Roane, ¶16)(Affidavit of David Perkins ¶¶18-20)

On May 11, 1999 Kospelich clocked in at 5:51 a.m. (Affidavit of Kospelich ¶20 & exhibit A thereto) and Roane clocked in at 6:11 a.m. (Affidavit of Roane ¶15 & exhibit A thereto).  That day the two went out for lunch together, Kospelich clocked out at 10:38 a.m. (Affidavit of Kospelich ¶¶19 & 22 & exhibit A thereto) and Roane clocked out at 10:38 (Affidavit of Roane ¶¶14 & 18 & exhibit A thereto).  Together, Kospelich and Roane went to Lama Seafood Restaurant which is located at 7007 Read Road near the corner of Read and the I-10 Service Road, behind the McDonald's fast food restaurant (Affidavit of Kospelich ¶¶21, 24, 27, 28, 29, 30 & 31)(Affidavit of Roane ¶¶16, 17, 18 & 19).  Kospelich drove his Ford Ranger, which was Kospelich's personal vehicle.  (Affidavit of Kospelich ¶¶24 & 25)(Affidavit of Roane ¶19)

Once they finished lunch, Kospelich and Roane left Lama to return to work, in Kospelich's Ford Ranger, which Kospelich drove.  (Affidavit of Kospelich ¶32)(Affidavit of Roane ¶20)  As usual, Kospelich's route to Home Depot from Lamas was via the I-10 Service Road which is located on the north side (by New Orleans terms the "lake side") of

6

I-10. (Affidavit of Kospelich ¶33)(Affidavit of Roane ¶21)  This service road is a two lane, two way road and Kospelich was traveling eastbound in the eastbound land of the service road. (Affidavit of Kospelich ¶¶34 & 35)(Affidavit of Roane ¶¶22 & 23)  After Kospelich completed the bend in the Service Road that wraps around McDonald's fast food restaurant, while still traveling in the eastbound lane, Kospelich and Roane saw a maroon car approaching them from the west, in the westbound lane of traffic.  (Affidavit of Kospelich ¶36)(Affidavit of Roane ¶24)  It appeared to Kospelich and Roane that the maroon car was speeding.  (Affidavit of Kospelich ¶¶37 & 38)(Affidavit of Roane ¶¶25 & 26)  It also appeared to them that the maroon car was out of control due to the fact that it was crossing into Kospelich and Roane's lane of traffic, which was oncoming traffic to the maroon car.   (Affidavit of Kospelich ¶39)(Affidavit of Roane ¶27)

While continuing to travel,  Kospelich and Roane watched as the maroon car traveling westbound and crossed into the eastbound lane against traffic, hit the curb on the east-south (river) side of the road, bounced off the curb, re-crossed Kospelich's lane of traffic and then crossed the westbound lane.  (Affidavit of Kospelich ¶40)(Affidavit of Roane ¶28)  The maroon car came to an abrupt stop when it hit a tree which was located off the roadway on the north (lake) side of the westbound side-lane of the service road. (Affidavit of Kospelich ¶41)(Affidavit of Roane ¶29)

As soon as the maroon car hit the tree the car started smoking.  (Affidavit of Kospelich ¶42)(Affidavit of Roane ¶30)  Kospelich recalls that the lady who had been

7

driving the car (later learned to be Ms. George) started screaming was screaming "help, help, my kid." (Affidavit of Kospelich ¶43) Roane does not recall what she was screaming but he recalls that it was his impression that Ms. George was screaming for help. (Affidavit of Roane ¶31) Kospelich pulled his Ford Ranger to the side of the road and he and Mr. Roane jumped out of their truck to render assistance. (Affidavit of Kospelich ¶44) (Affidavit of Roane ¶32)

When they got to Ms. George's car Kospelich noted that Ms. George was hysterical and Roane noted that the baby in the backseat of Ms. George's car was also hysterical. (Affidavit of Kospelich ¶45)(Affidavit of Roane ¶¶33 & 34)  Ms. George's car was continuing to smoke. (Affidavit of Kospelich ¶46)(Affidavit of Roane ¶35) The smoke was coming out from under the hood but Kospelich and Roane could not tell what was causing the smoke. (Affidavit of Kospelich ¶47)(Affidavit of Roane ¶36) Based on their visual observations of the severe force with which the maroon car hit the tree, the damage to the car, and the smoke that was pouring out from under the hood of the car, Kospelich and Roane's concern was that Ms. George's car was on fire and that she and the child in the back seat were in imminent danger of death if they did not get out of the car immediately. (Affidavit of Kospelich ¶48)(Affidavit of Roane ¶37)

Kospelich lifted Ms. George out of the car while Roane lifted the child from the car. (Affidavit of Kospelich ¶49) Kospelich recalls that while she was being lifted Ms. George was saying something to the effect of "my leg, my leg." (Affidavit of Kospelich ¶50) Based

8

on the surrounding circumstances Kospelich felt that there was no choice but to get Ms. George out of the car as quickly as possible. (Affidavit of Kospelich ¶51) Kospelich did not see the man from the Sewage and Water Board (later learned by the parties to be Ronald Walker) until after he lifted Ms. George completely out of her car. (Affidavit of Kospelich ¶52)

The police, fire department, and EMTs were summoned to the scene and Ms. George was taken away by ambulance. Immediately after the EMTs left the scene with Ms. George, Kospelich and Roane returned to Home Depot in Kospelich's Ford Ranger and clocked back in. (Affidavit of Kospelich ¶53)(Affidavit of Roane ¶42) Kospelich clocked in at 12:26 p.m. and Roane clocked in at 12:27p.m. (Affidavit of Kospelich ¶54 & exhibit A thereto)(Affidavit of Roane ¶43 & exhibit A thereto)

Both Kospelich and Roane's first notice that Ms. George was asserting any kind of claim against Home Depot, Kospelich, or Roane was in September or October, 2001 when they were contacted by the undersigned, Deborah Fallis.

### Basis of Motion

In her petition George alleges that **either** Kospelich **or** Roane could have been driving the Home Depot truck that caused her to take evasive action, and that **either** Kospelich **or** Roane could have been the rescuers who caused her further injury. The conclusory allegations in George's petition show that George cannot prove a set of facts in support of George's claims that either Kospelich or Roane were driving a Home Depot

truck which caused her to lose control of her car and hit a tree or that either Kospelich or Roane provided rescue services to Ms. George. Additionally, from George' petition, it is obvious that even if George were able to allege torts committed by Kospelich or Roane any claims against Kospelich or Roane are prescribed.

Alternatively, Defendants ask that this court consider Ronald Walker's (George's witness) deposition, the affidavits of Kospelich (Exhibit "A"), Roane (Exhibit "B"), and David Perkins (Exhibit "C"), Ronald Walker's (George's witness) deposition (Exhibit "D"), George's answers to Home Depot's written discovery (Exhibit "E"), and George's amended complaint (Exhibit "F") as together the information contained (or not contained) therein leave no doubt but that summary judgment dismissing Kospelich and Roane is appropriate.

### Standard of Review

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all material allegations of the complaint as true and construe them in the light most favorable to the non-moving party. *Garrett v. Commonwealth Mortgage Corp. of America*, 938 F.2d 591, 593 (5th Cir. 1991). Such a motion will succeed only if the complainant can prove no set of facts which would entitle the plaintiff to relief. Id. The court is not required, however, to "conjure up unpled allegations" to save a complaint. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988). Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to

dismiss. *Blackburn v. City of Marshall* , 42 F. 3d 925, 931 (5th Cir. 1995) Under the fraudulent joinder doctrine, if a party is "fraudulently joined" that party cannot be regarded as a genuine party for determining diversity jurisdiction. *Johnson*, 227 F.3d, 240.

The mover in a motion for summary judgment bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but it is not required to negate elements of the nonmoving party's case. *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998). A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, at 248 (1986).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential elements of its claim. *National Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 712 (5th Cir. 1994)  "A complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex Corp.v. Gatrett*, 477 U.S.317, 323 (1986).

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." *Edwards*, 148 F.3d at 432; accord *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Id.  "Moreover, the

11

nonmoving party's burden is not affected by the type of case; summary judgment is

appropriate in any case where critical evidence is so weak or tenuous on an essential fact

that it could not support a judgment in favor of the nonmovant." Id.

### George Fails to State a Claim Against Kospelich or Roane
### In Connection with the Cause of George's Accident

Based on the vague and non-specific allegations of Amended Paragraphs VI, VII,

VIII and IX it is also obvious that George has no idea who was driving the Home Depot

truck which is alleged to have caused Ms. George to lose control of her car and crash in to

the tree. The substantive allegations of Ms. George's complaint against Kospelich or Roane

on this point are as follows:

> V.
>
> Plaintiff avers that as she proceeded west on the Service Road,
> at approximately 150 feet short of the intersection with Read
> Boulevard, her vehicle was involved in the accident which
> forms the basis of the petition.
>
> VI.
>
> Plaintiff avers with particularity that as she operated her
> vehicle on the Service Road headed toward Read Blvd., there
> was a parked or temporarily stopped HOME DEPOT truck in
> a driveway at "The Palms Apartments" which entered the
> roadway in forma of plaintiff, creating a situation wherein an
> impact would become unavoidable unless plaintiff took
> evasive action.
>
> VII.
>
> Plaintiff avers that she swerved to the left to avoid the HOME
> DEPOT truck and in so doing lost control of the vehicle she
> was operating, and upon information and belief, hydroplaned
> on a wet roadway across the Service Road to the eastbound
> lane and back across the westbound lane of the I-10 Service

12

Road and struck a tree located in front of The Palms
Apartment complex.

VIII.

Plaintiff avers that upon information and belief her vehicle
may have been tapped by the HOME DEPOT delivery truck,
but that the contact between her vehicle and the HOME
DEPOT truck, if any contact was made, was minimal.

IX.

Plaintiff avers that the accident and injuries sustained by her
were caused through no fault of her own, but as a direct result
of the negligence of the **MIKE KOSPELICH AND/OR CHRIS
ROME** in the particulars itemized below, but not limited to the
following:

..................[11 acts of negligence are listed; all pertaining to
driving the Home Depot truck, but none specifically mention
either Kospelich or Roane ]

George's Amended Complaint paragraphs V-IX. (emphasis added)

There are no facts pled to support George's claim that Kospelich or Roane caused
or contributed to Ms. George's loss of control of her car. Based on the vague references to
Kospelich and Roane in paragraphs V through IX, and the structure of these allegations,
it must be concluded that George can prove no set of facts in support of her claim that
would entitle her to relief. The pending allegations do not suffice to prevent the dismissal
of all claims of George that Kospelich or Roane played any role in Ms. George's car
accident.

It is clear from George's complaint that she believes that a Home Depot truck caused
her to lose control of her car.[1]  It is also clear, however that George has no information

---

[1]Which point Home Depot denies.

13

regarding who was driving the truck, and that she certainly has nothing concrete, i.e. a witness or any physical evidence to show that either Kospelich or Roane were driving the truck which "caused" Ms. George to lose control of her car. George's claim against Kospelich or Roane is based on the conclusory allegation that since someone says that they saw a Home Depot truck near the scene of the accident, and Kospelich was wearing a shirt that said "Home Depot", and Kospelich and Roane were together, that Kospelich or Roane must have been driving the Home Depot truck.

George's allegations against Kospelich and Roane are missing both the element that establishes that Kospelich or Roane were driving the Home Depot truck and that Kospelich or Roane's actions caused Ms. George to lose control of her car. There is no cause of action against an individual unless it can be proven that that particular individual at least participated in the activity that caused the tort.

This case is not analogous to a three way car accident where one car blames the other two cars for the accident and leaves it to the other two cars to prove their respective fault allocations. Only one person could have been "behind the wheel" of the Home Depot truck (assuming one was even there) and George cannot even prove that Kospelich or Roane were ever inside that truck. Even if accepted as true and construed in the light most favorable to George, George has alleged no set of facts which would entitle George to relief. "Even if it can be shown that even though Plaintiff can prove every fact alleged his petition,

14

he still cannot recover as a matter of law, the exception must be sustained. *Hensley v. Geico*, 340 So.2d 603, 605 (1st Cir. La. 1976)

Alternatively, if the court believes that evidence should be taken on this subject, the affidavits of Kospelich, Roane and David Perkins,[2] the deposition of Ronald Walker, and Ms. George's answers to Home Depot's Interrogatories and Request for Production support the dismissal of these allegations against Kospelich and Roane. In their affidavits, Kospelich, Roane and David Perkins unequivocally state that neither Kospelich nor Roane was driving a Home Depot truck on May 11, 1999, nor were Kospelich or Roane employed as delivery drivers for Home Depot at that time or at any other time. (Kospelich Affidavit ¶7 through 10; Roane Affidavit ¶3, 4 and 5; Perkins Affidavit ¶14 and 16)

The deposition of Ronald Walker ("Walker")(Exhibit D) was noticed by George and taken on May 2, 2000. At deposition, Walker testified that on May 11, 1999 he was driving west on the I-10 Expressway. Intending to go to McDonald's fast food restaurant for lunch, while on the exit ramp at Read Road, traveling at about 25 miles per hour, (Walker deposition, p. 63 line 18) Walker glanced over to the service road and saw the following:

> A. It was– It looked like a burgundy color, a dark color, you know, vehicle. It was burgundy, sort of.
> Q. Was it an American car or a foreign car, or do you remember?

---

[2] David Perkins was employed on May 11, 1999, and remains to date, employed at Home Depot store #352. Perkins is the store's manager of all non-merchandise related departments, including the delivery/truck department of the store.

> A. To be honest with you, no. I could – You know. I'm driving, and , you know, I just glanced over and–
> Q. Which direction was that burgundy colored vehicle coming from"
> A. It was traveling in the same direction I was traveling.

Deposition of Ronald Walker, p. 14, lines 5-16.

According to Walker, the maroon car was a few feet closer to him than 80 to 90 feet. (Walker deposition, p. 67 lines 19-20) This car was "almost parallel, almost slightly behind" Walker's car. (Walker deposition, p. 64 lines 2-3)

The other vehicle that Walker saw during his "glance" over to the service road was a white truck which was in the driveway facing the service road. The truck was about 80-90 feet from Walker's car. (Walker deposition, p. 67 lines 12-13). According to Walker, the truck and the maroon car were about 60 to 70 feet away from one another. (Walker deposition, p. 67 lines 22-25 and p. 68. Line 1) Walker testified that based on his "glance" all that he recalled about the truck in the driveway was that it was white.

> A. It was a white truck. You know. I – I just saw the–You know. I could see the lettering and – you now, and I'm concerned, because I'm going to exit. I got a vehicle in front of me, and I just happened to look over because of the McDonald's. You know. I knew I was going to get off there, and I scanned and, you know, came back to the front.
> Q. Okay. Later, though, you saw the type of truck that it was–
> A. Yeah.

Walker deposition, p. 15, lines 14-25

16

Walker testified that after he saw the truck, and the car turned his attention to the road he was on and he continued driving. He heard a "boom" and saw smoke. (Walker deposition, p. 31, lines 13-20) Walker drove towards but passed the McDonald's to see what had happened and he found a burgundy car which he assumed to be the same car that he had seen from the expressway, "against the tree." (Walker deposition, p. 16, line 25) Walker also testified that he saw a truck which he believed to be the same truck as he had seen in the driveway:

> A. As I passed by, the truck was located near the McDonald's
> Q. What was the truck doing there? Do you know?
> A. I really didn't pay-I was trying to- I could see her laying-the driver laying outside of the vehicle.
> Q. so-
> A. So my first concern was to get to the injured person.

Walker deposition, p. 20 lines 1-10.

During the deposition an assumption was made that the white gentlemen wearing the "Home Depot" shirt was the man that occupied the truck that Mr. Walker identified as a Home Depot truck. Mr. Walker described this man as wearing tan shorts, and a green Polo type golf shirt with the words "Home Depot" written on the shirt. (Walker deposition, p. 68 lines 23-25; p. 69 lines 1-8) According to Walker, the man had sort of blondish hair cut "neat", no facial hair, and slender, 5'9", maybe 5'10", weighing about 140 or 150, in his mid twenties. This man told Walker "I made the call". (Walker deposition, pp. 22-25) Mr.

17

Walker never said that he saw these men, or any others inside of the Home Depot truck, however.

Mr. Walker described also another white male that was on the scene.  According to Walker, this man had "sort of long hair that come down to his collar" (Walker deposition, p. 21, lines 6-7) , was " sort of stocky", "wearing a dark plaid shirt" (Walker deposition, p. 21, lines 10-11), probably in his twenties (Walker deposition, p. 49, lines 18-19), wearing long pants (Walker deposition, p. 50, line 3).  He could not recall whether the shirt was a "company" shirt, because his "concern was the victim" (Walker deposition, p. 21, lines 13-15) Walker testified that this gentleman was holding the child when Walker arrived at the scene. (Walker deposition, p. 21, line 7)

Later during the deposition Mr. Walker was asked additional questions regarding these men.   Based on the testimony elicited from Mr. Walker it is clear that he did not actually see any one inside the truck, he only assumed that the men at the scene had been in the truck.

> Q.  ...Do you know how many people were in that Home Depot truck?
> A. I couldn't say.  All I saw was – The guy that walked up and say, "I made the call,"  he was talking to the gentleman that was holding the little girl. So I could only assume that, maybe, two.

Walker deposition, p. 24, lines 3-9.

> Q.  When you first saw the truck, could you tell how many occupants were in the truck.

A. No.
Q. The two white gentlemen that you saw after the accident, do
you know which of any of those was the driver of that truck?
A. No

Walker deposition pp. 66-67, lines 24 - 5.

Q. You mentioned that you did not see the Home Depot
"people," more than one. Do you recall seeing more than one?
A. Well, I'm assuming the guy -- you see, the guy he spoke to
was holding the child.
Q. With the plaid shirt?
A. Yeah. He said, "I made the call." He was talking to him.
Q. So you were – Would you assume then that that was a
Home Depot –
A. Employee.

Walker Deposition pp. 48-49, lines 17-2.

Had Walker had any idea as to who was driving the truck that Walker assumes caused the

accident George's counsel would have elicited this information during Walker's deposition.

Obviously Walker had no such information.

Walker could not have possibly seen who was driving the truck as by the time he

got to the scene, assuming that Kospelich or Roane had occupied the "Home Depot" truck

it would have to have been empty. Walker would also have no way of knowing where

Kospelich and Roane came from as by the time Walker got there, Kospelich and Roane had

19

parked Kospelich's pick-up truck, gotten out of their pick-up, Kospelich had removed Ms.

George from her car and Roane had removed the baby from the car.

> Q. Just so I'm clear on this, you didn't see anybody pull Ms.
> George out of – out of that vehicle, did you?
> A. No.

Walker deposition, p. 80, lines 19-22.

Under the circumstances, it is quite understandable that Walker has no idea where

Kospelich and Roane came from or in what vehicle they arrived at the scene.

Finally, Georges' responses to Home Depot's written discovery (Exhibit 5 en globo)

contains admissions that George has no evidence to substantiate her claim that either

Kospelich or Roane was driving the culprit truck.

> **Home Depot's Request for Production No. 5:**
> Any and all documents, photographs, video recordings, diagrams, or drawings which in any way relate to, evidence and/or support the allegations of Paragraph IX of your Petition for Damages that the " . . . truck operator . . . " described therein was an employee or agent of Home Depot on May 11, 1999.

> **George's Response to Request No. 5:**
> Plaintiff objects to this request as premature as discovery is ongoing and as defendant, who is in the best position to provide documentation relative to this request, has not yet answered discovery or provide the initial disclosure statement as set forth by the Federal Rules of Civil Procedure.

> **Home Depot's Request for Production No. 7:**
> Any and all documents, photographs, video recordings, diagrams, or drawings which in any way identify by name, address, telephone number, and/or physical description, or

20

tend to so identify, " . . . Sam Doe or John Doe or William Doe
. . ." described in Paragraph X of your Petition for Damages.

*George's Response to Request No. 7:*

Plaintiff objects to this request to the extent that it seeks the
production of any documents protected pursuant to the
attorney-work product doctrine and/or attorney client
privilege. Plaintiff further objects to this request as premature
as discovery is ongoing and as defendant, who is in the best
position to provide documentation relative to this request, has
not yet answered discovery or provided the initial disclosure
statement as set forth by the Federal Rules of Civil Procedure.

*Home Depot's Interrogatory No. 7:*

Please state the names, addresses and telephone numbers of all
persons who have any knowledge concerning the accident
forming the basis of the present lawsuit and, with respect to
each, please state in detail the knowledge each is known or
believed to have and the sources of such information.

*George's Answer to Interrogatory No. 7:*

Ronald Walker, the two Home Depot employees, and possibly
a United States Postal Employee

*Home Depot's Interrogatory No. 17:*

Identify and list all facts, including documents, witnesses,
testimony of witnesses or any other evidence upon which you
base the allegations in Paragraph IX of your Petition for
Damages.

*George's Answer to Interrogatory No. 17:*

Plaintiff objects to this request as premature. Subject to the
stated objections, plaintiff, Pamela George will testify as to
allegations contained in Paragraph IX.

George has no evidence to controvert Kospelich, Roane, and Perkin's affidavits

regarding the fact that neither Kospelich nor Roane were behind the wheel of any Home

21

Depot truck on May 11, 1999, or that Kospelich or Roane were occupying Kospelich's private vehicle, coming from the opposite direction of Ms. George when she lost control of her car. This lack of evidence constitutes a complete failure of proof concerning an essential element of George's case and renders all other facts on this issue immaterial.

Summary judgment is appropriate in this case because George is without the critical evidence to support any finding that Kospelich or Roane were driving the truck (alleged to be a Home Depot truck) which George holds culpable for her accident.[3]  Neither Kospelich nor Roane were driving a Home Depot truck. George has no evidence to show otherwise nor is she entitled to an assumption or a presumption that she will eventually be able to prove otherwise.

### George Fails to State a Claim Against Kospelich or Roane In Connection with Rescue Efforts

George's allegation regarding the basis for the claim of injury resulting from Kospelich or Roane's rescue efforts is contained in a single paragraph of George's amended complaint:

X.

That *alternatively and/or in the conjunctive*, Michael Kospelich, and Kristian Roane alone or in combination,

---

[3] The primary reason that George is without this evidence is that it does not exist, but giving George the benefit of the doubt, and assuming that her allegations were made in good faith, George still has no evidence to put Kospelich or Roane behind the wheel of the "culprit" truck.

22

stopped the vehicle in which they were driving or riding in an
effort to render aide to plaintiffs. That in so doing *one or both
of the defendants* tried to negligently and forcefully remove
plaintiff, Pamela George, from the vehicle which had the effect
of worsening and/or aggravating her injuries and causing
unnecessary additional severe and excruciating pain and
suffering for which defendant Home Depot is vicariously
liable.

(Amended Complaint paragraph X) (emphasis added)

Georges petition fails to state any possible basis for the assessment of liability to Kospelich

or Roane for their good Samaritan rescue actions.

La. R. S. 9:2793, entitled *Gratuitous service at scene of emergency; limitation on liability,*

provides as follows:

A. *No person who in good faith gratuitously renders
emergency care, first aid or rescue at the scene of an emergency,*
or moves a person receiving such care, first aid or rescue to a
hospital or other place of medical care *shall be liable for any
civil damages as a result of any act or omission* in rendering
the care or services or as a result of any act or failure to act to
provide or arrange for further medical treatment or care for the
person involved in the said emergency; provided, however,
such care or services or transportation shall not be considered
gratuitous, and this Section shall not apply when rendered
incidental to a business relationship, including but not limited
to that of employer-employee, existing between the person
rendering such care or service or transportation and the person
receiving the same, or when incidental to a business
relationship existing between the employer or principal of the
person rendering such care, service or transportation and the
employer or principal of the person receiving such care, service
or transportation. This Section shall not exempt from liability
those individuals who intentionally or by grossly negligent
acts or omissions cause damages to another individual.

23

> B. The immunity herein granted shall be personal to the individual rendering such care or service or furnishing such transportation and shall not inure to the benefit of any employer or other person legally responsible for the acts or omissions of such individual, nor shall it inure to the benefit of any insurer.

La. R. S. 9:2793 (emphasis added)

George's complaint fails to allege that either Kospelich and/or Roane's actions were not:

    1.    In good faith; or

    2.    Rendered gratuitously; or

    3.    For emergency care, first aid or rescue at the scene of an emergency, or movement of a person receiving such care, first aid or rescue to a hospital or other place of medical care; and

Georges complaint is additionally without allegations that the aide alleged to have been provided by Kospelich or Roane:

    4.    Was rendered incidental to a business relationship; or

    5.    That Kospelich or Roane intentionally or by grossly negligent acts or omissions caused damages to Ms. George.

Pursuant to La. R. S. 9:2793, even if Kospelich and Roane[4] provided rescue services to Ms. George, and even if their efforts resulted in a worsening of Ms George's condition (which is specifically denied), Kospelich and Roane are immune from liability to Ms. George.

Therefore, even when liberally construed, the well pleaded facts of George's complaint fail to state any cause of action against Kospelich or Roane for their alleged good Samaritan rescue efforts, and George's claims against Kospelich and Roane based on their rescue efforts should be dismissed pursuant to F.R.C.P. 12(b)6.

Alternatively, should it be deemed that George's complaint does state a cause of action against Kospelich and Roane for liability resulting from their rescue efforts, Kospelich and Roane's affidavits on this point which are uncontroverted provide a more than sufficient basis on which to grant summary judgment. These affidavits make it clear that Kospelich and Roane's rescue efforts were in good faith, rendered gratuitously, for emergency rescue at the scene of an emergency, and that their efforts were not rendered incidental to a business relationship, nor did they consist of intentional or grossly negligent acts or omissions.

Walker's deposition testimony further buttresses Kospelich and Roane's position. Walker described what he heard and saw prior to the time that he arrived at the scene:

---

[4]As is discussed in the next section of this memorandum, Roane did not provide any assistance to Ms. George.

> A. ...looked back. You know. I thought it was an explosion. It was that loud, and as I got around the curb, and I saw the vehicle against the tree and Home Depot truck up in front, and no other traffic passed me at that point. You...

Walker deposition, p. 56, lines 5-9.

Walker has no idea how or why Ms. George was outside of her car.

> Q. Just so I'm clear on this, you didn't see anybody pull Ms. George out of – out of that vehicle, did you?
> A. No.

Walker deposition, p. 80, lines 19-22.

Under the circumstances, if dismissal of Georges' claim for damages suffered as a result of rescue effects is not justified by 12(b)(a), it is still justified by summary judgment.

### Alternatively, George Fails to State a Claim Against Roane in Connection with Rescue Efforts

The tortfeasor to which George alludes with respect to the rescue efforts is vague and unspecified. To put the matter bluntly, George has no idea as to whether Kospelich, Roane, or someone else lifted her out of her car after the accident and this lack of information is obvious in her pleadings. Paragraph X of George's Amended Petition states in pertinent part:

26

X.

>    That *alternatively and/or in the conjunctive*, MIKE
> KOSPELICH AND CHRIS *alone or in combination*, stopped
> the vehicle in which they were driving or riding in an effort to
> render aide to plaintiffs. That in so doing *one or both of the*
> *defendants* tried to negligently and forcefully remove
> plaintiff...........

(George's Amended Complaint)(emphasis added)

The allegations of Amended Paragraph X are vague and non-specific. It is obvious that George has no idea whether either Kospelich or Roane assisted Ms. George. This vagueness will not withstand a 12(b)(6) challenge and on this basis Georges claim against Roane should be dismissed.

There is no doubt that George can prove no set of facts in support of her claim that would entitle her to relief against Roane for damages suffered as a result of emergency rescue efforts of which Roane was not a participant. *Robertson v. Plaquemines Parish Sch. Bd.,* 2000 U.S. Dist. LEXIS 12878 citing *Jefferson v. Lead Indus. Ass'n, Inc.,* 106 F.3d 1245, 1250 (5th Cir. 1997) (citing *Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284-85 (5th Cir. 1993)); accord *Heitschmidt v. City of Houston,* 161 F.3d 834, 835 (5th Cir. 1998). Therefore, in this instance George's claim against Roane stemming from emergency rescue efforts alleged to have been committed by Roane should be dismissed for failure to state a claim.

Alternatively, attached hereto are the affidavits of Kospelich (Exhibit "A") and Roane (Exhibit "B"). As paragraphs 48 through 52 of Kospelich's affidavit, and paragraphs 32

27

through 41 of Roane's affidavit clearly show, Kospelich alone rendered gratuitous emergency rescue services to Ms. George. Roane rendered aid only to Ms. George's child.

It is also clear that the first person on the scene following Kospelich and Roane was Walker, and as discussed above, Walker did not arrive at the scene until after Ms. George was removed from her car. Kospelich and Roane's affidavits are clear on this point.

> Q. Just so I'm clear on this, you didn't see anybody pull Ms. George out of – out of that vehicle, did you?
> A. No.

Walker deposition, p. 80, lines 19-22.

> *Interrogatory No. 18:*
> Identify and list all facts, including documents, witnesses, testimony of witnesses or any other evidence upon which you base the allegations in Paragraph X of your Petition for Damages.

> *Answer to Interrogatory No. 18:*
> Plaintiff objects to this request as premature. Subject to the stated objections, plaintiff, Pamela George will testify as to allegations contained in Paragraph X.

Under the circumstances, the pleadings, depositions, answers to interrogatories and request for production, together with the affidavits show that there is no genuine issue as to the fact that Roane is entitled to a judgment dismissing George's claim for damages for injuries sustained as a result of rescue services as alleged in Amended Paragraph X as a matter of law.

28

## Neither Kospelich Nor Roane Were Acting in the Course
## And Scope of Their Employment with Home Depot at the
## Time of George's Accident

There is no doubt that Kospelich and Roane were "clocked out" and on their lunch hour at the time of the Incident. Their computer generated time sheets documenting the hours worked on May 11, 1999 and their affidavits confirm this. The fact that as hourly wage employees, during their lunch hour, Kospelich and Roane were not discharging any duties in the scope of their employment and that neither Kospelich nor Roane were compensated for the time that they spent "clocked out" at lunch is also attested to in David Perkins', ("Perkins") affidavit. Perkins was the administrative store manager of the store to which Kospelich and Roane were assigned and working on May 11, 1999. Ms. George's responses to Home Depot's written discovery supports Home Depot's position:

> *Request No. 6:*
> Any and all documents, photographs, video recordings, diagrams, or drawings which in any way relate to, evidence and/or support that "... Sam Doe or John Doe or William Doe ..." described in Paragraph X of your Petition for Damages were employees or agents of Home Depot on May 11, 1999.

> *Response to Request No. 6:*
> Plaintiff objects to this request to the extent that it seeks the production of any documents protected pursuant to the attorney-work product doctrine and/or attorney client privilege. Plaintiff further objects to this request as premature as discovery is ongoing and as defendant, who is in the best position to provide documentation relative to this requests, has not yet answered discovery or provided the initial disclosure statement as set forth by the Federal Rules of Civil Procedure.

In *Diaz v. Allstate Insurance Company, et al,* 480 So. 2d 995(4th Cir. 1985) the court found that even though the employee, Robert Donnelly was driving his employer's car at the time of the car accident that the employee was not in the course and scope of his employment because the mission that the employee was on was purely personal.

> We cannot conclude that Donnelly was in the course and scope of his employment. He took his lunch hour and left his place of work. His mission was purely personal--to get lunch. He was returning to his place of work but again to engage in personal activities, eating lunch. He would not begin performing functions for the district attorney until he returned to his office and finished lunch. Being negligent while on his lunch hour and returning from picking up lunch could hardly be regarded as a risk of harm fairly attributable to the district attorney's business.

*Diaz v. Allstate Insurance Company et al,* 480 So. 2d at 997.

*See also Johnson v. Dufrene,* 433 So.2d 1109 (La. App. 4th Cir. 1983). Neither Kospelich nor Roane were acting in the course and scope of their employment with Home Depot while they were on their way back to Home Depot from lunch. Neither Roane nor Kospelich were on the clock, performing work for, or under the supervision of, Home Depot at the time of the incident, nor were their good Samaritan actions taken in the course and scope of their employment. Under these circumstances, there is no known Louisiana theory under which a suit by George against Home Depot could have interrupted the one year liberative prescriptive period running in favor of Roane and Kospelich. See La.C.C. art. 3492. Although the provisions of La.C.C. art. 2324 provide that the filing of a lawsuit

against a joint tortfeasor interrupts the running of prescription against other joint tortfeasors, it is clear that George is badly mistaken about the facts surrounding alleged Home Depot involvement in the incident, and the filing of a lawsuit against Home Depot cannot result in interruption against Roane and Kospelich under the irrefutable circumstances. Therefore, Home Depot can not be jointly liable with Kospelich or Roane for any torteous acts by Kospelich or Roane relating to the incident.

Viewing the situation from a different perspective yields the same result. The evidence is also incontrovertible that Kospelich and Roane were riding in the direction opposite that of Ms. George, and that they were riding in Kospelich's personal Ford Ranger at the time of the incident. Therefore, assuming that either Kospelich or Roane committed any tort on George, Home Depot would not be liable for the negligence of Kospelich or Roane and any liability of Kospelich or Roane to George would be completely independent of any possible liability of Home Depot.

Based on the undeniable facts, George's cause of action against Kospelich and Roane for damages sustained as a result of Ms. George's car accident and as a result of damages sustained as a result of rescue efforts by Kospelich and/or Roane has prescribed, and all claims of George against Kospelich or Roane should be dismissed as prescribed.

### Conclusion

The intentional lack of specificity of George's petition regarding the identity of the person or persons who were driving the culprit truck and that of the person(s) who

31

provided emergency care to Ms. George after the accident is blatant. Ms. George has no information other than that she has received from Home Depot in discovery. The fact of the matter is that the only two known eye witnesses to George's accident are Kospelich and Roane, and had Kospelich not admitted that he was the person who rendered assistance to Ms. George, she still would not know who had rendered assistance to her. Under the circumstances, Kospelich and Roane's evidence that they committed no actionable torts and that any claims against them have prescribed is irrefutable.

George's complaint fails to state a cause of action against Kospelich or Roane as it fails to state a basis by which George could recover against Kospelich or Roane as a matter of law and because any claims against Kospelich or Roane have prescribed.

Alternatively, based on the pleadings, affidavits and depositions on file, Kospelich and Roane are entitled to be dismissed as George lacks the critical evidence required to prove that Kospelich or Roane were driving the truck that George alleges caused her accident.

Respectfully submitted,

_____
DEBORAH W. FALLIS, (Bar #2177)
**Heller Draper Hayden Patrick & Horn**
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130
(504) 581-9595 or (504) 568-1888
Attorneys for Home Depot U.S.A., Inc.

32

## CERTIFICATE OF SERVICE

I hereby certify a copy of the foregoing Motion and Incorporated Memorandum of Home Depot U.S.A., Inc. in support of Motion to Dismiss for Failure to State a Claim and for Prescription, and in the alternative Motion for Summary Judgment was served upon Plaintiffs through their counsel of record: Clifford E. Cardone, Esq., 829 Baronne Street, New Orleans, Louisiana 70112; and Michael E. Katz, Esq., 365 Canal Street, Suite 2700, New Orleans, Louisiana 70130; facsimile and by depositing a copy of same in the U. S. Mail, postage prepaid and properly addressed, this 2V day of March, 2001.

F:\USERS\DWF\Homedepot\George\Pleadings\2001-03-27 12B6 II.wpd

33