UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 APR 17  AM 9: 42

LORETTA G. WHYTE
CLERK

PAMELA GEORGE, Individually
and as the Tutrix of her minor daughter,
Kaycie George

VERSUS

HOME DEPOT USA, INC.,JOHN DOE,
WILLIAM DOE,  SAM DOE
and XYZ INSURANCE COMPANY

:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION

NO.   00-0006

SECTION "T"

MAGISTRATE (1)

## PLAINTIFF'S OPPOSITION TO RULE 12(b) MOTION FOR DISMISSAL AND/OR MOTION FOR SUMMARY JUDGMENT

*MAY IT PLEASE THE COURT:*

Defendants' Motion for Dismissal argues affidavits and facts outside of the pleadings. Where matters outside the pleadings are considered by the district court on a motion to dismiss, F.C.R.P. Rule 12(b) requires the court to treat the motion as one for summary judgment and to dispose of it as required by F.C.R.P. Rule 56. *Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972); *Jackson v. Procunier,* 789 F.2d 307, 310 (5th Cir.1986).

Here, defendants' motion to dismiss is accompanied by affidavits by two defendants, Kospelich and Roane, which present matters outside of the pleadings.  Accordingly, defendants' motion to dismiss should be treated as a motion for summary judgment under Rule 56. Whenever a motion to dismiss is treated as a motion for summary judgment, the nonmovant is entitled to the procedural safeguards of Rule 56. *Isquith v. Middle South Utilities, Inc.,* 847 F 2d 186, 195 (5th Cir.1988), *cert. denied,* 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988); *Capital Films Corp. v. Charles Fries Prods., Inc.,* 628 F.2d 387, 391 n. 1 (5th Cir.1980).

Fee
Preces
Dktd
CtRmDep
Doc.No. 55

F.R.C.P. Rule 56 does not require that any discovery take place before summary judgment can be granted; however, if a party cannot adequately defend such a motion, Rule 56(f) allows a remedy to provide the nonmovant with an opportunity to conduct necessary discovery.. *New America Shipbuilders, Inc. v. United States,* 871 F.2d 1077, 1081 (Fed.Cir.1989); *Reflectone, Inc. v. Farrand Optical Co., Inc.,* 862 F.2d 841, 843-44 (11th Cir.1989); *American Nurses Association v. State of Illinois,* 783 F.2d 716, 729 (7th Cir.1986); *Weir v. Anaconda Co.,* 773 F.2d 1073, 1081 (10th Cir.1985); *United States of America, acting Through the Small Business Association v. Light,* 766 F.2d 394, 397 (8th Cir.1985).

Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The protection afforded by Rule 56(f) is an alternative to a response in opposition to summary judgment under Rule 56(e) and is designed to safeguard against a premature or improvident grant of summary judgment. 10A Wright, Miller, and Kane, *Federal Practice and Procedure* §§ 2740 (1983).

To obtain a Rule 56(f) continuance, the nonmovant must present specific facts explaining his inability to make a substantive response as required by Rule 56(e) and by specifically demonstrating "how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Securities and Exchange Commission v. Spence & Green Chemical Co.,* 612 F.2d 896, 901 (5th Cir.1980), (quoting *Willmar Poultry Co. v. Morton-Norwich Products, Inc.,* 520 F.2d 289, 297 (8th

Cir.1975). *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, (5th Cir.1990).

Here, despite efforts by plaintiff to discover facts which would place either Kospelich or Roane as the driver of the Home Depot truck that caused the accident, sufficient discovery has not yet taken place and plaintiff requires additional time to conduct adequate discovery. As set forth hereinafter, plaintiff has been able to establish that a Home Depot truck was present at the scene of the accident. Defendants, Kospelich and Roane admit to being at the accident, but claim that they were there on their lunch hour and in Kospelich's personal vehicle. Both Kospelich and Roane deny seeing a Home Depot truck in the vicinity of this accident. However, despite efforts by plaintiff to take the depositions of Kospelich and Roane, those depositions have not yet been taken. Defendants ask this Court to dismiss these proceedings based solely on the affidavits of Kospelich and Roane without allowing a factfinder the opportunity to *see* or *hear* either of these defendants testify and without allowing plaintiff to cross-examine either of these defendants to test their veracity.

1.   ***The testimony of a disinterested witness places a Home Depot truck at the scene of this accident.***

Despite Kospelich's and Roane's affidavits swearing that no Home Depot trucks were in the vicinity of this accident, Ronald Walker, a disinterested witness, testified that he saw a burgundy car (Ms. George's automobile) traveling down the service road and **a Home Depot truck** coming out of a driveway onto the service road, as he was exiting the Interstate, moments before the collision. His car was traveling in the same direction on the Interstate, as Ms. George's car was traveling on the Service Road. **(See Exhibit "A" - Walker Deposition p 15).** Mr. Walker testified that he glanced in the direction of the Service Road and saw "a white truck with orange lettering, like Home Depot." When asked whether the truck was *like* Home Depot or was

a Home Depot Truck, Mr. Walker replied, "**Home Depot.**" **(See Exhibit "A" - Walker Deposition page 13).** Mr. Walker testified that the truck appeared to be moving out of a driveway of an apartment complex. **(Walker Deposition page 13).** However, seconds later, immediately after the collision, when Mr. Walker came back around on the Service Road after exiting the Interstate, he noticed that the position of the Home Depot truck had changed. The Home Depot truck was no longer in the driveway of the apartment complex. Instead, the Home Depot truck was now parked on the grass near the McDonald's. "When I came around the curb to go to the scene, the truck wasn't there." **(See Exhibit "A" - Walker Deposition page 19)**. "As I passed by, the truck was located near the McDonalds." **(See Exhibit "A" - Walker Deposition page 20)**. This testimony indicates that the Home Depot truck moved from one location to another, thus raising a reasonable hypothesis that the Home Depot truck improperly pulled out in front of Ms. George, causing her to lose control of her vehicle.

From his position at the red light, after he had exited the Interstate and was waiting to turn onto the Service Road, Ronald Walker was in a position to see all vehicles that were coming from the scene of the accident. **(Exhibit A - Walker Deposition p. 34).** He saw no "vehicles that were traveling around the service road" in between the time he heard the crash and he ultimately reached the scene. **(Exhibit A - Walker Depo. P. 34)**. He saw no trucks traveling in a westbound direction on the service road after he heard the crash. **(Walker Depo. P. 34).** This testimony indicates that no other vehicles could have caused this accident. Mr. Walker was in a position to see any other trucks that were at the scene of the accident and he saw no other trucks but the Home Depot truck.

**2.**  ***The testimony of the disinterested witness supports Pamela George's affidavit that the Home Depot truck caused the accident.***

Ronald Walker's deposition testimony places a Home Depot truck in two separate locations near the scene of this accident. This testimony supports Pamela George's Affidavit which states that a Home Depot truck pulled out in front of her, clipped her car on the passenger side, causing her to lose control of her vehicle and strike a tree.

Both Kospelich and Roane admit to being at the scene of the accident. The question of whether either Kospelich or Roane were the driver of the Home Depot truck identified by Mr. Walker is a reasonable hypothesis. Whether this circumstantial evidence is sufficient for a conclusion that either Kospelich or Roane were the driver of the Home Depot truck is a factual question, which is not appropriate for summary judgment. See, *McNamara v. American Liberty Ins. Co.,* 99-175 (La.App. 3 Cir. 10/13/99), 745 So.2d 704.

**3.**  ***Defendant cannot rely on a lack of identification when defendant has failed to provide documents necessary to establish this fact.***

The gist of Home Depot's argument in support of a motion for summary judgment is that plaintiff "has no evidence to show" who was driving the Home Depot truck "nor is she entitled to an assumption or a presumption that she will eventually be able to prove otherwise."[1] Yet Home Depot has done everything within its power to thwart plaintiff's efforts to discover which of the two Home Depot employees were the driver of the Home Depot truck that was at the scene of the accident according to the testimony of the disinterested witness, Ronald Walker.

On June 15, 2000, counsel for plaintiff forwarded Requests for Production of documents

---

[1]     Home Depot Motion and Incorporated Memorandum in Support of Motion to Dismiss or alternatively Motion for Summary Judgment, Page 22

which sought the production of policies and procedures relative to the operation of Home Depot delivery trucks. Home Depot objected to the production of this documentation, claiming that said policy and procedure manuals constituted trade secrets. Subsequently, plaintiff filed a Motion to Compel the production of this documentation. After hearing the arguments of both counsel, Magistrate Chasez ordered Home Depot to produce the policy and procedure manuals to the court for an *in camera* inspection on or about February 5, 2001. Subsequently, pursuant to the Court's order, Home Depot was required to produce the policy and procedure manual to plaintiff. Plaintiff's counsel received this document in March 2001.

The production of the policy and procedure manual brings up additional areas which must be discovered. Counsel for plaintiff has requested that counsel for defendant provide a convenient date for a 30(b)(6) deposition; however, counsel for defendant has stated that she cannot come up with an available date for a 30(b)(6) deposition until she knows the areas of inquiry. Counsel for plaintiff forwarded a list of the general areas of inquiry to counsel for defendant on April 10, 2001. The 30(b)(6) deposition of Home Depot still needs to be taken.

In October 2000, in answers to interrogatories, defendant identified Kospelich and Rome [sic] as two Home Depot employees who were witnesses to this accident. In a subsequent discovery conference which took place toward the end of 2000, counsel for plaintiff requested that the depositions of Mr. Kospelich and Roane be scheduled, but counsel for Home Depot suggested that these depositions be delayed until after plaintiff amended her complaint to name them as defendants since they may require separate counsel. Counsel for defendant further insisted that the depositions of plaintiff's mother and brother be taken prior to any depositions of Home Depot employees. The depositions of Frederick George and Jean George, plaintiff's

brother and mother, were originally scheduled for December 18, 2000; however, these depositions were canceled by counsel for Home Depot and have not yet been rescheduled.

On November 11, 2000, Plaintiff propounded Second Requests for Production to Home Depot seeking the production of Home Depot's (1) delivery pick up list and load authorizations; (2) daily trip time records; and (3) delivery confirmation forms for all stores in the New Orleans area for May 11, 1999.    On November 29, 2000, Home Depot responded to those discovery requests by stating that it "has not been able to locate" any of the requested documents. Subsequently, on March 8, 2001, plaintiff's counsel forwarded correspondence to counsel for defendant scheduling a discovery conference for March 22, 2001.  Counsel for defendant was not able to make this discovery conference and counsel for plaintiff scheduled a subsequent discovery conference.  Counsel for defendant was also not able to make the second discovery conference and the discovery conference has now been rescheduled, by mutual consent, for April 30, 2001. Based on information obtained from counsel for defendant, Home Depot is in possession of 4 boxes of documents which were obtained from Home Depot's computer main frame of all orders and/or purchases that were made for delivery on May 11, 1999.  According to counsel for Home Depot, these documents will be produced on April 30, 2001.  Counsel for plaintiff will then have to review these documents.

Plaintiff has diligently attempted to obtain discovery within the time limits permitted by the court in the case management order.  Nonetheless, the only deposition which has been taken in this case to date is the deposition of the disinterested witness, Ronald Walker.  No depositions of Home Depot employees have been taken.  The corporate deposition of Home Depot has not been taken.  Documents which were sought in discovery in November 2000 have still not been

produced.  Clearly, insufficient discovery has taken place for this matter to be decided on summary judgment.

**4.**   *Plaintiff requires additional time to conduct further discovery.*

Federal Rule 56(f) offers a "procedural 'escape hatch' for a party who genuinely requires additional time to marshal 'facts essential to justify [its] opposition' when confronted by a summary judgment motion." *Paterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985, 988 (1st Cir.1988) (quoting *Hebert v. Wicklund,* 744 F.2d 218, 221 (1st Cir.1984)).  Under Rule 56(f), "[t]he movant must (1) articulate a plausible basis for the belief that discoverable materials exist which would raise a trialworthy issue, and (2) 'demonstrate good cause for failure to have conducted the discovery earlier.' " *Price,* 931 F.2d at 164 (quoting *Paterson-Leitch,* 840 F.2d at 988).  The Rule 56(f) affidavit "should articulate some plausible basis for the party's belief that *specified* 'discoverable' material facts likely exist".

Ms. George's affidavit articulates a plausible basis for the belief that discoverable materials exist which would raise a trialworthy issue.  **(See Affidavit of Pamela George - Exhibit B_).** Her affidavit further demonstrates plaintiff's good faith efforts to obtain the discoverable materials.  Finally, her affidavit articulates a plausible basis for her belief that specified discoverable material facts do, in fact, exist.  Accordingly, pursuant to Rule 56(f), defendants' motion for summary judgment should be denied.

**5.**   *La. R.S. 9:2793 does not provide immunity for one who (1) causes the accident, or (2) who does not render emergency care, first aid, or rescue, or (3) who acts with gross negligence.*

Defendants, Kospelich and Roane,  rely upon Louisiana's Good Samaritan immunity statute in support of their argument that there can be no liability against either Kospelich or Roane

for their actions in pulling plaintiff from her car, further injuring her leg.  The purpose of the good Samaritan immunity statute is to encourage citizens to render gratuitous aid to injured persons. Op. Atty.Gen., No. 77-537, 4/5/77.  No case law supports the proposition that this statute provides immunity for the tortfeasors who **cause** an accident which causes injury, simply because they rush over to the injured victim with apologies and kind words.  To allow the person who causes the accident to escape liability simply because that person performs some innocuous act of kindness after the accident would defeat the purpose of the statute and create a windfall for careless operators of automobiles.

In order to receive the good Samaritan immunity, a person must "in good faith" gratuitously render "emergency care, first aid or rescue at the scene of an emergency," or **move** "a person receiving such care, first aid or rescue **to a hospital** or other place of medical care." Here, Kospelich admits that he moved Ms. George. [2]  He claims that he moved her completely from the car so that she was completely lying on the ground.  This statement is in direct conflict with the testimony of Ronald Walker, who testified that "[t]he lady was laying out - - Her legs were still inside the vehicle, but her body, upper extremities was outside of the vehicle." **(See Exhibit A - Walker Deposition, page 20, line 25 - page 21, line 3.)**

Based on both the affidavit of Kospelich and the deposition testimony of Ronald Walker, Kospelich did not **move** Ms. George "to a hospital or other place of medical care", as required by the statute.  Mr. Kospelich's affidavit provides no statements that he gave any "emergency care" or "first aid" to Ms. George.  Thus, the only claim to the good Samaritan immunity that Kospelich can make is that he *rescued* Ms. George from an automobile that was smoking.  However, based

---

[2]    Kospelich Affidavit - No 52.

on the deposition testimony of Ronald Walker, Kospelich left Ms. George half in the car and half out of the car - so he clearly did not *rescue* her in the plain sense of that word.

Not every person who attempts to lend assistance is accorded the status of rescuer. *Dodge v. Pierre*, 348 So.2d 167 (La. App. 3rd Cir. 1977). In *Stevenson v. Delahaye*, 310 So.2d 651, 653-654 (La.App. 1st Cir. 1975), the court, in denying plaintiff rescuer status, noted that for actions to rise to the level of a rescuer, the rescuer must make some effort or take some action "to protect the personal safety of another who was or who appeared to be in **imminent** peril." Id. at 654.

Here, if Kospelich truly thought that Ms. George's car was going to blow up because smoke was coming out of the hood, would he have left her legs in the car to burn? Based on the deposition testimony of Ronald Walker, Kospelich was **not** a Good Samaritan rescuer. Mr. Walker's deposition testimony creates genuine issues of material fact which preclude summary judgment.

Alternatively, Kospelich is not entitled to an immunity based on the Good Samaritan statute because he was grossly negligent in his attempts to rescue Ms. George from the car. During the time that Kospelich was attempting to pull Ms. George from the car, she cried over and over, "Please stop! You're hurting me!". **(See Affidavit of Pamela George - Exhibit B).**

## *CONCLUSION*

The affidavits of defendants, Kospelich and Roane, are self-serving denials of liability. Plaintiff should be allowed the opportunity to challenge the self-serving statements of these defendants before the finder of fact. The affidavit of Plaintiff, Pamela George and the deposition testimony of the disinterested witness, Ronald Walker create genuine issues of material fact which

-10-

preclude summary judgment. Alternatively, defendants' motion for summary judgment should be denied to allow Ms. George, sufficient time within which to conduct further discovery, especially in light of defendant, Home Depot's, delay in responding to discovery and in presenting the witnesses, Kospelich and Roane for depositions

Respectfully submitted.

CARDONE LAW FIRM
A PROFESSIONAL LAW CORPORATION

CLIFFORD E. CARDONE (# 3874)
829 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 581-1394

and

**MICHAEL E. KATZ**
ROBERTS, KATZ & BAUDIER
365 Canal Street, Suite 2700
One Canal Place
New Orleans, Louisiana 70130
Telephone: (504) 522-7791
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading has been served on counsel for all represented parties and upon all unrepresented parties by mailing same via First Class, United States Mail, properly addressed and postage prepaid, this **16**[th] day of **April 2001.**

**CLIFFORD E. CARDONE**

-11-

1  Road?

2      A.    Well, I -- as I was exiting the I-10,

3  -- As I said, I was going to the McDonald's.

4  So you can see the McDonald's on the service

5  road.  There's a fence there.  So you are,

6  really, about, maybe, 50 feet, maybe 75 feet

7  from the roadway, and I just happened to glance

8  over, and I saw a white truck with orange

9  lettering, like Home Depot.

10      Q.    Like Home Depot, or it was Home

11  Depot?

12      A.    Home Depot.  It was an orange

13  lettering.

14      Q.    Okay.

15      A.    And I saw a vehicle right behind it.

16  You know.

17      Q.    Okay.  Let me ask you a few questions

18  about that.

19      A.    Okay.

20      Q.    When you first saw the Home Depot

21  truck, what was its position?

22      A.    It appeared to be moving out.

23      Q.    From where?

24      A.    It looked -- There is an apartment

25  complex there.  So there's a little driveway.

PLAINTIFF'S
EXHIBIT
4

1      Q.    As you faced the vehicle, the small
2  burgundy vehicle or the burgundy vehicle that
3  you mentioned, were you going toward that
4  vehicle in a head-on direction, or were you
5  next to it on the I-10?

6      A.    I was parallel, you would say,
7  because I'm on the interstate here.  The
8  service road runs parallel.  Okay?  And the
9  driver of the burgundy vehicle was about here,
10  parallel with me, and the white vehicle, the
11  Home Depot vehicle was right here.

12      Q.    Okay.  Can you describe the Home
13  Depot vehicle, what it looked like?

14      A.    It was a white truck.  You know.  I
15   -- I just saw the -- You know.  I could see
16  the lettering and -- you know, and I'm
17  concerned, because I'm going to exit.  I got a
18  vehicle in front of me, and I just happened to
19  look over because of the McDonald's.  You
20  know.  I knew I was going to get off there, and
21  I scanned and, you know, came back to the
22  front.

23      Q.    Okay.  Later, though, you saw the
24  type of truck that it was --

25      A.    Yeah.

1    Q.    I know that you -- And maybe I'm

2 unclear.

3    A.    Okay.

4    Q.    When you were on the I-10, you said

5 the Home Depot truck was coming out of a

6 driveway, what appeared to be coming out of a

7 driveway?

8    A.    Yeah.

9    Q.    Now, when you come around and you go

10 in the service road in an eastbound direction,

11 that driveway would have been located on what

12 side of the street?

13    A.    On my left.

14    Q.    On your left, okay.  And that would

15 be the side that you saw that truck coming out

16 from as you passed it on the I-10?

17    A.    Yes, but it wasn't in the driveway at

18 that time.

19    Q.    As you passed it, it wasn't in the

20 driveway?

21    A.    No.  As -- When I came around the

22 curb to go to the scene, the truck wasn't

23 there.

24    Q.    Where was the truck when you came

25 around the curb?

1    A.    As I passed by, the truck was located

2    near the McDonald's.

3    Q.    What was the truck doing there?  Do

4    you know?

5    A.    I really didn't pay -- I was trying

6    to -- I could see her laying -- the driver

7    laying outside of the vehicle.

8    Q.    So --

9    A.    So my first concern was to get to the

10   injured person.

11   Q.    I want to kind of establish the

12   geographics of the scene.

13   So as you are approaching the

14   vehicle that's on the right side of the I-10

15   Service Road next to a tree, that Home Depot

16   truck would have been now parked on the

17   left-hand side of the I-10 Service Road near

18   the McDonald's?  Is that my understanding?

19   A.    It wouldn't be on the left.  It would

20   be -- It was on the same side as the vehicle

21   that struck the tree.

22   Q.    Okay.  All right.  And what did you

23   notice next as you approached the scene?  You

24   said you saw the lady?

25   A.    Yeah.  The lady was laying out -- Her

1 legs were still inside the vehicle, but her

2 body, upper extremities was outside of the

3 vehicle.

4     Q.    Okay.

5     A.    And there was a gentleman standing

6 there with very -- sort of long hair that come

7 down to his collar, was holding a little girl.

8     Q.    Can you describe that man, other than

9 long hair?

10     A.    He was a white male, sort of stocky.

11 I believe he had on a plaid shirt.  It was a

12 dark -- I believe it was a dark plaid shirt.

13     Q.    Was it a company shirt?

14     A.    I couldn't tell.  I can't remember.

15 My concern was the victim.

16     Q.    And what else did you see?

17     A.    As I pulled up, I pulled and blocked

18 traffic, jumped out of my vehicle and ran to

19 her vehicle.

20          The horn on the vehicle was

21 going off loud, and there was a postman that

22 was -- also, had walked up that was standing

23 there, and she was saying, "Oh, my legs, my

24 legs," and I was trying to keep her calm.  I

25 figured her leg was broke.

1    Q.    Let me ask you this.  As you were

2  sitting at the light here, did you see any

3  other -- would you have been in the position to

4  see any vehicles come from the scene of the

5  accident?

6    A.    Yes.

7    Q.    Did you see any vehicles come from

8  the scene of the accident between the time you

9  heard the crash and you ultimately reaching the

10  scene?

11    A.    I didn't see any vehicles that were

12  traveling around the service road.

13    Q.    Did you see any trucks traveling in a

14  westbound direction on that service road after

15  you heard the crash?

16    A.    No.

17    Q.    And where you parked your vehicle,

18  you mentioned that you had blocked the roadway?

19    A.    Yes.

20    Q.    With you blocking the roadway, could

21  any vehicles have passed?

22    A.    Me, when I got out?

23    Q.    Yes.

24    A.    No.

25    Q.    And the Home Depot vehicle was parked

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PAMELA GEORGE, Individually | : | CIVIL ACTION |
| and as the Tutrix of her minor daughter, | : | |
| Kaycie George | : | NO.    00-0006 |
| | : | |
| VERSUS | : | SECTION "T" |
| | : | |
| HOME DEPOT USA, INC.,JOHN DOE, | : | MAGISTRATE (1) |
| WILLIAM DOE,  SAM DOE | : | |
| and XYZ INSURANCE COMPANY | : | |

### AFFIDAVIT

STATE OF LOUISIANA

PARISH OF ORLEANS

Before me, the undersigned Notary,

PERSONALLY CAME AND APPEARED:

PAMELA GEORGE,

a person of full age of majority, who, after being duly sworn, did depose and declare:

1.    On May 11, 1999, I was  injured in a motor vehicle accident in the I-10 Service Road in New Orleans east.

2.    As I was traveling down the I-10 Service Road, a Home Depot truck began pulling out of a driveway at or near the Palm Apartments onto the road in front of me.  In order to avoid the Home Depot truck, I began swerving my steering wheel.  The Home Depot truck tapped the front passenger side of my vehicle near or on the bumper while I was swerving, causing my vehicle to swerve out of  control and strike a tree.



3.    My daughter, Kaycie George, was the only passenger in my vehicle.

4.    Immediately after the accident, the Home Depot truck pulled around and parked near my wrecked vehicle. The driver of the Home Depot truck left the Home Depot truck and came up to me. He began pulling me out of the car. My right ankle was pinned in the car and I began screaming for him to stop pulling me because he was hurting my leg.

5.    The driver of the Home Depot truck said, "Oh my God. I've got to go."

6.    Then the gentleman began to leave and I said, "don't leave me. Please don't leave me."

7.    Then, the passenger from the Home Depot truck got out of the truck and came up to me. He was wearing a polo shirt with the Home Depot logo on it. He motioned for the driver to leave and told me that they had to leave because they were "out of area."

8.    Shortly after the events described in 4, 5, 6, and 7 above occurred, other people came to the scene of the accident.

9.    It is my understanding that my attorneys have attempted to obtain copies of Home Depot's (1) delivery pick up list and load authorizations; (2) daily trip time records; and (3) delivery confirmation forms for all stores in the New Orleans area for May 11, 1999, through discovery requests directed to Home Depot on November 11, 2000.

10.    It is my understanding that on November 29, 2000, Home Depot responded to those discovery requests by stating that it "has not been able to locate" any of the requested documents.

11.    It is my understanding that subsequently, counsel for Home Depot advised that a request was made in December for documentation from Home Depot's computer main frame for documents responsive to my requests. However, as of this date, no documents responsive to my request of November 11, 2000 have been provided to my attorneys.

12.    It is my understanding that during a discovery conference with counsel for Home Depot, my attorney requested that the depositions of Mr. Kospelich and Mr. Roane be scheduled; however, counsel for Home Depot suggested that the depositions of these two witnesses be held off until I supplemented and amended my complaint to name them as defendants since they may be required to retain their own counsel, which would necessitate the retaking of their depositions.

13.    It is my understanding that  my attorney requested that we take the depositions of Mr. Kospelich and Roane, but counsel for Home Depot further  insisted that the depositions of my mother and brother be taken prior to any depositions of Home Depot employees.

14.    The depositions of my brother, Frederick George and my mother, Jean George, were originally scheduled for December 18, 2000; however, it is my understanding that those depositions were canceled by counsel for Home Depot.

15.    My attorneys and I cannot adequately defend defendants' Motion for Summary Judgment and in particular Kospelich's and Roane's affidavits stating that they were **not** driving a Home Depot truck, until we have an opportunity to examine Home Depot's delivery documentation for May 11, 1999 and an opportunity to depose Kospelich and Roane.

16.    I believe that the Home Depot documents relative to deliveries, pickups, and orders for May 11, 1999 will yield evidence that Home Depot had a truck in the vicinity of my accident, despite Kospelich's and Roane's affidavits to the contrary.  Evidence of a Home Depot truck in the vicinity of my accident at the time of my accident would raise  a trialworthy issue.

17.    As set forth hereinabove, the failure to obtain the Home Depot documentation is not the result of a lack of effort on the part of my attorneys.

18.    It is my understanding that my attorneys had previously scheduled two discovery

conferences as a prelude for a Motion to Compel Home Depot's documentation; that

counsel for Home Depot had to cancel both discovery conferences because of a previously

scheduled conflict on her calendar;

19.    It is my understanding that my attorney and counsel for Home Depot have agreed to meet

on April 30, 2001 to discuss Home Depot's discovery responses.

20.    I have instructed my attorneys to proceed with a Motion to Compel more complete

responses to Plaintiff's Second Request for Production of Documents in the event they are

unable to obtain the requested documentation on or before April 30, 2001.

21.    I have further instructed my attorneys to proceed with the scheduling of the depositions of

Kospelich and Roane, and to file a Motion to Compel the depositions of these defendants

if counsel for defendant will not voluntarily schedule these depositions.

WITNESSES:

_____

_____

PAMELA GEORGE

SWORN TO AND SUBSCRIBED
BEFORE ME, NOTARY, THIS
16th DAY OF April, 2001
AT NEW ORLEANS, LOUISIANA.

_____
NOTARY PUBLIC