

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PAMELA GEORGE, Individually and as the Tutrix of her minor daughter, Kaycie George | § § § | CIVIL ACTION |
| | § | NO. 00-0006 |
| VERSUS | § § | |
| | § | SECTION "T" |
| HOME DEPOT USA, INC., JOHN DOE WILLIAM DOE, SAM DOE and XYZ INSURANCE COMPANY | § § § | MAGISTRATE (1) JURY TRIAL |

**REPLY MEMORANDUM TO
PLAINTIFFS' OPPOSITION TO RULE 12(b) MOTION FOR
DISMISSAL AND/OR MOTION FOR SUMMARY JUDGMENT**

This Reply Memorandum is respectfully submitted by Home Depot U.S.A., Inc. ("Home Depot"), Michael Kospelich ("Kospelich") and Kristian Roane ("Roane") (jointly "Defendants") in response to Plaintiffs' opposition to Defendants' motion to dismiss Kospelich and/or Roane for failure to state a claim and for prescription, pursuant to Federal Rule of Civil Procedure 12(b)(6) and in the alternative, motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) ("Plaintiffs' Opposition").

A.  **No Additional Discovery is Needed Prior to Deciding this Matter**

This matter has been in federal court since Home Depot removed the case on January 3, 2000. Pamela George and her daughter (jointly "George") has had ample opportunity to conduct discovery, or to have motions to compel decided. The issues concerning Home Depot's inability to comply with discovery requests results mostly from Home Depot's difficulty in proving a negative, that no Home Depot truck or on duty employees were on the scene. In fact, because of the inverse factual elements on which George has focused, the identity of the Home Depot employees who were actually on the scene of Ms. George's accident was insusceptible of determination from Home Depot's records. But it for the fact that George came up with the name "Rome" (which turned out to be "Roane") and disclosed his name to counsel for Home Depot on or about May, 2000,[1] Home Depot may still not know that Roane (and Michael Kospelich) were at the scene of the accident.

Keeping in mind that the Motion only goes to the dismissal of Roane and Kospelich as individual tortfeasors, other than Roane and Kospelich's timesheets, which were

---

[1] It should be noted that, although George accuses Home Depot of dilatory tactics, George waited over 6 months from the time that it advised Home Depot about Roane to attempt to bring him into the lawsuit. It also is obvious George knew about Roane's name prior to disclosing them to Home Depot, so the actual delay was even longer. These inactions and other tactics which caused Home Depot's investigation of the facts of this case to be thwarted are summarized in Home Depot's Opposition to Plaintiff's prior motion to compel, attached as Exhibit "A."

2

attached to their respective affidavits, Home Depot has no records which could possibly establish what Roane and Kospelich, who are not even drivers for Home Depot, were doing at the time of the incident. According to these records, Roane and Kospelich were on their own time in their own vehicle, and they as well as Home Depot have already conceded this fact as well as the fact that Roane and Kospelich were employed by a Home Depot store on the date in question. Any additional discovery by George could only go to whether Home Depot has independent liability pertaining to facts other than those involving Roane and Kospelich, such as by way of ownership or operation of the phantom Home Depot truck by other employees (which Home Depot denies).

In response to George's contention that Home Depot is thwarting George's diligent attempts to timely engage in discovery, Home Depot submits that the record speaks for itself. Home Depot has addressed concerns of George on numerous occasions, and memorialized them with correspondence. See attached letters. (Exhibit "B", in globo)

**B.    George's Did Not Argue that Kospelich or Roane Caused Ms. George to Loose Control of Her Car**

Plaintiffs' Opposition demonstrates that George is gasping at straws in the hope that they will somehow keep two wrongfully sued individuals in court. Whether George's incentive is based on the hope that keeping Kospelich and Roane in as party defendants will aid George in their attempt to remand this case to state court (an issue which currently is under advisement), or that their presence will enhance the value of George's case in the

eyes of a jury is unknown. The bottom line, however, is that there is no justification for keeping Kospelich or Roane in this case.

The instant motion does not involve the issue of whether Home Depot had a marked, company owned truck on the scene.[2], as Plaintiffs' Opposition would like to lead one to believe. Rather, Defendants' motion is limited to relief based on the fact that neither Roane, nor Kospelich were driving a Home Depot truck or caused Ms. George to hit a tree

George's retort to Defendants' motion boils down to the argument that Ms. George and Mr. Walker say that a Home Depot truck was on the scene, therefore Kospelich and Roan, Home Depot employees who admit that they were on the scene must not be dismissed. George's argument is not sound. Just because Kospelich and Roane are dismissed from this case George will not be precluded from arguing that a Home Depot truck caused her to loose control of her car.[3]

In their sworn affidavits, Kospelich, Roane, and Home Depot employee David Perkins ("Perkins") clearly set forth the fact that neither Kospelich nor Roane were driving a Home Depot truck on May 11, 1999, nor were they involved in a "near collision" or a "collision" with Ms. George that caused her to loose control of her car. The only way that

---

[2] Which Home Depot, Roane and Kospelich deny.

[3] Defendants adamantly deny that a Home Depot truck was at the scene of the accident at any time or that a Home Depot truck and/or Home Depot employees in any way caused Ms. George to loose control of her car.

George can refute these facts is to demonstrate that Kospelich, Roane and Perkins flat out lied to this Court in their affidavits about Kospelich and Roane being on an unpaid lunch break in an unmarked, private mini-pickup truck at the time of the incident. If the affidavits of Kospelich, Roane and Perkins are believed, Kospelich and Roane must be dismissed from this case. Yet George has not alleged this in any manner!

The deposition testimony of Ronald Walker, assuming for the sake of argument that it is accurate and true, does not refute the affidavits as to Roane or Kospelich as to their presence in a private vehicle outside the course and scope of employment. The same is correct if we assume, for the sake of argument, that Ms. George's affidavit is true, because it indicates that the driver of the "official" Home Depot truck told Ms. George that he had to go because he was "out of area." When seen in the light most favorable to George these "facts" do not controvert Defendants' position that Kospelich and Roane had no role in Ms. George losing control of her car. George is attempting to use apples to refute oranges in the hope that the obfuscation will defeat Defendants' Motion.

C.   **George Has Conceded that Roane Should be Dismissed.**

Further, Ms. George's affidavit indicates that the alleged driver of the Home Depot truck was the person who attempted to rescue George, while the passenger did nothing as a part of the rescue effort.[4] She has alleged no circumstances under which the alleged

---

[4] George has made no allegation as to how the passenger caused the accident in question.

5

passenger of the Home Depot truck did anything actionable. Yet she sued two employees of Home Depot.

If one reads George's affidavit in context with Kospelich's and Roane's affidavits, and assume that George was simply mistaken about there being a marked Home Depot Truck, the stories mesh. Kospelich was wearing a shirt with a Home Depot logo while Roane was not. Kospelich and Roane were in Kospelich's own personal pickup. Taken together, the affidavits clearly establish that George has in no way stated a cause of action against Roane. In fact, in reviewing George's analysis of the Good Samaritan argument at pages 8-10 of the Opposition, George accepts Defendants' representation that Kospelich who was the rescuer. Based on George's affidavit, George has essentially indicated that Roane has no actionable relationship to this case under any set of circumstances. See Ms. George's affidavit attached to Plaintiffs' Opposition, Sections 4-8.

D.  **The Good Samaritan Statute is an Absolute Bar to Recovery Against Kospelich and Roane**

George defends against Kospelich and Roane's Good Samaritan defense on the basis that the tortfeasor cannot utilize the defense, and also because the single person who rendered aid may not have fully removed George from the vehicle. Initially, it should be noted that George's argument could only go to the driver, who in turn rendered aid. As discussed earlier, this should automatically lead to the dismissal of Roane.

6

As evidenced by the affidavits of Kospelich and Roane, they were not the people in the phantom Home Depot truck that allegedly caused the accident. Home Depot contends that even if a tortfeasor who causes an accident could not escape liability under the Good Samaritan law, it is irrelevant because Kospelich and Roane were not the tortfeasors who caused the accident.

Turning to the second argument, George takes a twisting, scattergun approach. In one place, George appears to be suggesting that the duty does not end unless and until the Samaritan gets the victim to a hospital, which is incredible given the fact that trained EMT's took over the scene, rendered aid and transported George to the hospital. Would George have preferred that Kospelich place George in Kospelich's mini-pickup truck and drive her to the hospital in lieu of trained medical attention? George also argues that because Kospelich was not able to get George completely out of the vehicle, he really was not a rescuer because he never effected the rescue.[5] As a predicate, George also cites a case indicating that a rescuer is one who makes some effort to protect the personal safety of another who was or appears to be in imminent peril. George then makes an argument that if Kospelich really thought that George was in peril, he would have removed her completely from the car. Finally, George asserts, without authority, that Kospelich is not

---

[5] George apparently misread Kospelich's affidavit, because Kospelich clearly admits that he could not get George out of the vehicle. On page 9 of George's memorandum, George asserts that Kospelich claimed to have completely removed George from the vehicle.

entitled to immunity because he was grossly negligent when he attempted to remove Ms. George from her car.

Kospelich's affidavit clearly indicates he saw smoke coming from the vehicle and was afraid that the vehicle was on fire. Home Depot is unable to understand how George can argue that Kospelich did not have actual fear for Ms. George's safety when he pulled Ms. George from her car.

Regardless of whether Kospelich removed Ms. George partially or completely from her car, Ms. George's affidavit does not support her argument. In Section 4 of her affidavit, Ms. George states that the driver of the "Home Depot truck" began pulling her from the car. She states that "my right ankle was pinned in the car and I began screaming for him to stop pulling me because he was hurting my leg." In other words, assuming for the sake of argument that Kospelich was the rescuer, Ms. George did not want, and requested that, Kospelich not fully remove her from the vehicle. In section 6 of the same affidavit, she indicates that she told the driver "don't leave me. Please don't leave me." Reading these two sections together, Ms. George wanted assistance, but didn't want to be fully extricated. In other words, even taking Sections 4 and 6 of Ms. George's affidavit (which are the only Sections that deal with Kospelich's Good Samaritan actions) as true, Kospelich is still entitled to the Good Samaritan defense in this case.

George has cited no judicial authority or facts that take Roane or Kospelich outside the clear language and rationale of the Good Samaritan Statute. George relies on cases

which pre-date the applicable statute, Louisiana Revised Statute 9:2793, and which involve rescuers who are asserting actions against either the rescuees and/or third parties. The cases cited by George are completely distinguishable from the case before the bar.

In <u>Dodge v. Pierre,</u> 348 So.2d, (La. App. 3 Cir. 1977), the plaintiff attempted to claim the status of Good Samaritan in order to make a claim for personal injuries sustained while he was standing in a lane of traffic, holding a light to assist another person who was pouring gas into the tank of a truck which had run out of gas. In that matter there was no injured party who required " emergency care, first aid or rescue" as required by Louisiana Revised Statute 9:2793.

In <u>Stevenson v. Delahaye,</u> 310 So.2d 651 (La. App. 1st Cir. 1975) the plaintiff attempted to use the Good Samaritan statute as a basis for a cause of action against initial persons in an accident and their rescuer. In that case, the plaintiff was not the rescuer. He merely returned to an accident site where others had rendered assistance. While at the accident site, plaintiff was injured by yet another driver who, while intoxicated ran into essentially everyone who was at the site, including plaintiff. The Court allowed plaintiff's action against the drunk driver, but dismissed his action against the initial drivers and their rescuer.

In dismissing plaintiff's claims against the people involved in the initial accident and their rescuer, the <u>Stevenson</u> Court reviewed the meaning of "rescuer" as defined in the jurisprudence. In one of the cases relied on a police officer had attempted to render aid to

a driver who was slumped over in his automobile unconscious. While the officer was trying to determine the reason for the driver's condition the driver inadvertently touched the accelerator which action resulted in injury to the police officer. The police officer sued the driver and the question as to whether the police officer was a "rescuer" became an issue. In that case the Court found that the officer was a rescuer. Gambino v. Lubel, 190 So.2d 152 (La. App 4th Cir. 1966).

The facts of this case more strongly support a finding that the Home Depot employees were acting as "rescuers." Ms. George has just had an automobile accident in which her vehicle sustained damage and her condition was unknown. The Home Depot employees in good faith gratuitously rendered her assistance to free her from her vehicle which was smoking and which they feared was on fire. Ms. George was also screaming for help.

**E. Prescription**

Roane and Kospelich argued that any claims against them were prescribed because suit was filed against them more than a year after the incident, and there is no basis for the filing of suit against Home Depot to interrupt prescription against them under the facts alleged in the petition, as supplemented by the affidavits. George has put forth no argument whatsoever in defense of this claim.

## F. Conclusion

It is abundantly clear that no facts short of a finding of perjury can refute that, on May 11, 1999, Kospelich and Roane were off duty in Kospelich's private mini pickup truck when the accident involving George occurred. They were not being paid, and they were not in the course and scope of their employment with Home Depot. No amount of additional time or discovery will change that.

The issue before this Court is not whether a Home Depot owned and operated truck was at the scene, although it is quite clear that there was none. All that is before the Court at this time is whether Roane and Kospelich should be dismissed on the basis that they were not driving a Home Depot truck, were not involved in the causation of Ms. George's car accident, were not in the course and scope of their employment, that the Good Samaritan statute is an absolute bar to recovery, and that the matter has prescribed.

For the reasons set forth herein as well as in Home Depot's original memorandum and affidavits submitted therewith, and those set forth in the memorandum, deposition transcript and affidavit submitted by George in opposition to Home Depot's motion, Roane and Kospelich should be dismissed from this lawsuit.

Respectfully submitted,

_____
DEBORAH W. FALLIS, (Bar #2177) T.A.
**Heller Draper Hayden Patrick & Horn**
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130
(504) 581-9595 or (504) 568-1888
Attorneys for Home Depot U.S.A., Inc.

### CERTIFICATE OF SERVICE

I hereby certify a copy of the Foregoing Reply Memorandum to Plaintiffs' Opposition to Rule 12(b) Motion For Dismissal and/or Motion For Summary Judgment was served upon Plaintiffs through their counsel of record: Clifford E. Cardone, Esq., by hand delivery upon Clifford E. Cardone, 829 Baronne Street, New Orleans, Louisiana, 70112, and Michael E. Katz, Esq., 365 Canal Street, Suite 2700, New Orleans, Louisiana, 70130, this 23rd day of April, 2001.

_____

F:\USERS\DWF\Homedepot\George\Pleadings\2001-04-20 Reply to Opp to 12b6 Motion.wpd

**SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED**